IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN E. RATIGAN, | : | CIVIL ACTION NO. **4:CV-08-1667** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MARIE TRGOVAC, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I. Background.

The Plaintiff, Brain E. Ratigan, currently an inmate at the United States Penitentiary at

Pollock, Pollock, Louisiana, and formerly an inmate at the United States Penitentiary at Allenwood,

White Deer, Pennsylvania ("USP-Allenwood"), filed this action, *pro se*, pursuant to

28 U.S.C. § 1331[1], on September 8, 2008, naming three Defendants employed by the United

States Bureau of Prisons ("BOP").[2] All three of the Defendants were employed at USP-Allenwood

during the relevant times of this case. The three USP-Allenwood Defendants are: Marie L. Trgovac,

---

[1]Under 28 U.S.C. § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the Untied States." (Emphasis added).

[2]Venue in this Court is proper with respect to this § 1331 civil rights action since the incidents in question occurred at USP-Allenwood and all Defendants were employed there. Plaintiff indicates that he was transferred to USP-Allenwood on September 1, 2005, and he was transferred to USP-Pollock, his current place of confinement, on December 27, 2006. (Doc. 7A, p. 4, ¶ 13. and p. 14, ¶ 56.). Plaintiff's instant claims seem to have arisen from October 2006 through December 2006, and as with his prior #08-0301 M.D. Pa. civil rights case, they all relate to his alleged treatment after he wrote a letter to Defendant Trgovac stating that they had an intimate relationship many years prior to his incarceration and that they had a daughter (Teresa), who Plaintiff had never seen until the early spring of 2006 when Trgovac brought her on a tour of USP-Allenwood.

Psychologist; Todd Cerney, Disciplinary Hearing Officer ("DHO"); and Chris McConnell, S.I.S. Lieutenant.   (Doc. 7A, pp. 1-2).   Plaintiff sues all three Defendants only in their individual capacities.   (*Id*.).

This is the second, almost identical § 1331 civil rights action which Plaintiff has filed against the same three Defendants.  Plaintiff's first case was filed on February 19, 2008, and was docketed to Civil No. 08-0301, M.D. Pa.  In his #08-0301 case, Plaintiff raised Fifth Amendment Due Process claims, First Amendment claims, and an equal protection claim.   After we screened Plaintiff's first case under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A, we issued a Report and Recommendation ("R&R") on March 6, 2008.   In reviewing Plaintiff's Complaint in case #08-0301,  under 28 U.S.C. §1915(e)(2)(B), we found that the Plaintiff was unable to maintain his action as against all of the Defendants with respect to his First Amendment claims and his equal protection claim.   We found that Plaintiff stated only a due process claim against Defendants.   After we issued our R&R, Plaintiff filed a Motion for Voluntary Dismissal of his case.  (Docs. 6 and 7, #08-0301).  Plaintiff also filed Objections to our R&R on March 31, 2008. (Doc. 10, #08-0301).  On April 10, 2008, the District Court issued an Order and granted Plaintiff's request for voluntary dismissal without prejudice. (Doc. 11, #08-0301).   Plaintiff's #08-0301 case was then closed.

As stated, Plaintiff then commenced the instant case, No. 08-1667, on September 8, 2008. Plaintiff filed an Amended Complaint in his new action, #08-1667, on September 16, 2008. (Doc.

7).[3]  Plaintiff attached a lengthy 28-page, 100-paragraph, typed Amended Complaint to a form Amended Complaint.  We refer to the form Amended Complaint as Doc. 7 and the typed 28-page Amended Complaint as Doc. 7A.  In his typed Amended Complaint, Plaintiff refers, in part,  to his action as a *Bivens* civil rights suit.  (Doc. 1A, p. 2).  Plaintiff did not attach any exhibits to his original and Amended Complaints.[4]  Plaintiff also filed a motion for leave to proceed *in forma pauperis*. (Doc. 2).

## II.  PLRA.

As stated, the Plaintiff has filed an application to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  The PLRA[5] obligates the Court to engage in a screening process when a prisoner wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.[6]  Specifically, Section 1915(e)(2), which was created by § 805(a)(5) of the Act, provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that (A) the allegation of poverty is untrue; or (B) the action or appeal (i) is frivolous or malicious; (ii) fails to

---

[3]The Clerk of Court incorrectly filed Plaintiff's Amended Complaint as a new civil rights action instead of as his amended pleading in case number 08-1667.  We corrected this error. (*See Doc. 8).*

[4]We note that in his prior case, #08-0301, Plaintiff attached several exhibits to his Complaint (Exs. 1-6).

[5]Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

[6]Plaintiff completed an application to proceed *in forma pauperis* and authorization to have funds deducted from his prison accounts.  The Court then issued an administrative order directing the warden to commence deduction of the full filing fee due the court from the Plaintiff's prison trust fund account.  (Docs. 2, 3 and 5).

> state a claim on which relief may be granted;
> or (iii) seeks monetary relief against a
> defendant who is immune from such relief.

A Complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke*

*v. Williams*, 490 U.S. 319, 325 (1989).

## III. Motion to Dismiss Standard.

The Court in *O'Connell v. Sobina*, 2008 WL 144199, *2 (W.D. Pa.), set forth the new

standard to dismiss as annunciated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, –U.S.

–, 127 S. Ct. 1955 (2007), as follows:

> As the United States Supreme Court recently held in
> *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S.Ct.
> 1955, 167 L.Ed.2d 929 (May 21, 2007), a complaint must
> be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) if it does not allege
> "enough facts to state a claim to relief that is plausible on
> its face." *Id.* at 1974 (rejecting the traditional 12(b)(6) standard
> set forth in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99,
> 2 L.Ed.2d 80 (1957)). The court must accept as true all
> all allegations of the Complaint and all reasonable factual
> inferences must be viewed in the light most favorable to plaintiff.
> *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d 939, 944
> (3d Cir. 1985). The Court, however, need not accept inferences
> drawn by plaintiff if they are unsupported by the facts as set
> forth in the complaint. *See California Pub. Employee Ret. Sys. v.
> The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing
> *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906
> (3d Cir. 1997)). Nor must the court accept legal conclusions
> set forth as factual allegations. *Bell Atlantic Corp.*, 127 S.Ct.
> at 1965 (citing *Papas an v. Allain*, 478 U.S. 265, 286, 106 S.Ct.
> 2932, 92 L.Ed.2d 209 (1986)). "Factual allegations must be
> enough to raise a right to relief above the speculative level."
> *Bell Atlantic Corp.*, 127 S.Ct. at 1965. Although the United
> States Supreme Court does "not require heightened fact pleading
> of specifics, [the Court does require] enough facts to state a claim
> to relief that is plausible on its face." *Id* at 1974.

The Court uses the same standard of review under 28 U.S.C. §1915(e)(2)(B) as a Rule 12(b)(6) motion. *Grayson v. Mayview State Hosp.*, 293 F. 3d 103, 110 (3d Cir. 2002); *Sharpe v. Costello*, 2007 WL 1098964, *3 (M.D. Pa. 2007).

## IV. *Bivens*.

As stated, Plaintiff styles his action as being filed, in part, pursuant to *Bivens* in his typed Amended Complaint (Doc. 7A). Under *Bivens*, the District Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 to entertain an action brought to redress alleged federal constitutional or statutory violations by a federal actor under *Bivens, supra*. Pursuant to *Bivens*, "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." *Butz v. Economou*, 438 U.S. 478, 504 (1978). A *Bivens*-style civil rights claim is the federal equivalent of an action brought pursuant to 42 U.S.C. § 1983 and the same legal principles have been held to apply. *See, Paton v. LaPrade*, 524 F.2d 862, 871 (3d Cir. 1975); *Veteto v. Miller*, 829 F.Supp. 1486, 1492 (M.D. Pa. 1992); *Young v. Keohane*, 809 F.Supp. 1185, 1200 n. 16 (M.D. Pa. 1992). In order to state an actionable *Bivens* claim, a plaintiff must allege that a person has deprived him of a federal right, and that the person who caused the deprivation acted under color of federal law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Young v. Keohane*, 809 F.Supp. 1185, 1199 (M.D. Pa. 1992); *Sharpe*, 2007 WL 1098964, *3.[7]

---

[7]Recently, the Third Circuit in *Banks v. Roberts*, C.A. No. 07-2793, slip op. p. 2, n. 1, 2007 WL 3096585, * 1, n. 1 (3d Cir. 10-19-07) (Non-Precedential), noted that "A '*Bivens* action' is a commonly used phrase for describing a judicially created remedy allowing individuals to seek damages for unconstitutional conduct by federal officials. This constitutional tort theory was set out in *Bivens* . . . "

It is well established that personal liability in a civil rights action cannot be imposed upon a prison official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976). It is also well settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a civil rights case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

A civil rights complaint must state time, place, and responsible persons. *Id.* With these principles in mind, Plaintiff's allegations with respect to the Defendants will be discussed.

## V. Allegations of the Amended Complaint (Doc. 7A).

Plaintiff raises a myriad of claims in his voluminous 8-count, 100-paragraph amended pleading. (Doc. 7A). Plaintiff's Count I asserts RICO claims against the three Defendants under 18 U.S.C. §§ 1961 through 1965. (Doc. 7A, pp. 18-19). Plaintiff alleges that Defendants, through a racketeering enterprise consisting of the BOP, used their official positions to obstruct justice, tamper with a witness, provide false inculpatory statements, conceal exculpatory evidence , illegally detain him and retaliate against him, and tried to "maliciously prosecute [him] for extortion." (*Id.*). Plaintiff claims that Defendants, through the BOP, participated in a pattern of racketeering activity

6

to violate his Constitutional rights. (*Id*.).

In Count II, Plaintiff raises a Fifth Amendment Due Process claim against Defendants. (Doc. 7A, pp. 20-22). Plaintiff avers that Defendant Trgovac made false statements and concealed exculpatory evidence in order to obtain a misconduct conviction against him which resulted in his confinement in the SHU and ultimately, in his transfer to another prison, *i.e.* USP-Pollock. Plaintiff alleges that Defendant Trgovac made false statements, falsified documents and concealed evidence in an attempt to have him criminal prosecuted. Plaintiff alleges that DHO Defendant Cerney convicted him of a misconduct offense without an adequate charge and without having supporting evidence. Plaintiff alleges that Defendant SIS Lt. McConnell conducted an improper investigation into the incident between Plaintiff and Defendant Trgovac regarding Plaintiff's letter to her, and that McConnell had a conflict of interest and covered up improper conduct by Defendants since he had an intimate relationship with Trgovac at the time. (*Id*.).[8]

In Count III, Plaintiff raises a First Amendment claim against Defendant Trgovac for violating his right to freedom of expression since she allegedly refused to let him communicate with a woman he believed was their daughter. (Doc. 7A, pp. 22-23). Plaintiff claims that Defendant McConnell violated his First Amendment right to access to the courts since this Defendant kept him in the SHU at USP-Allenwood under false pretenses "effectively denying [Plaintiff] access to the courts ... ."

---

[8]As discussed below, we shall recommend once again that Plaintiff be allowed to proceed with his Fifth Amendment Due Process claims against the three Defendants, Count II.

In Count IV, Plaintiff claims that he was illegally seized and detained by Defendant McConnell (presumably in the SHU) without proper probable cause and held there under false pretenses  based on false evidence used to implicate him in criminal conduct submitted by Defendant Trgovac in violation of his Fourth Amendment right.  (Doc. 7A, p. 23).

In Count V, Plaintiff raises a Sixth Amendment denial of effective assistance of counsel claim against all three Defendants.  Plaintiff claims that all Defendants, without stating each Defendant's personal involvement, conspired to make sure that he was ineffective with respect to his *pro se* representation of himself during his defense of the disciplinary charges filed against him.  Plaintiff avers that the conduct of all Defendants, *i.e.* preparing and submitting false and fraudulent evidence against him during all stages of his BOP administrative hearings, made him ineffective in representing himself to ensure his disciplinary convictions.  (Doc. 7A, pp. 23-24).

In Count VI, Plaintiff claims that his Eighth Amendment right was violated since the Defendants acted "with intent and deliberate indifference to inflict severe psychological torment, [and] distress" on him.  (Doc. 7A, pp. 24-25).  Plaintiff also seems to raise a Pennsylvania state law claim for intentional infliction of emotional distress against Defendants in Count VI.[9]

In Count VII, Plaintiff asserts a claim for failure to properly instruct, supervise and control, and he alleges that the Constitutional violations he claims Defendants committed were due to the

---

[9]Insofar as Plaintiff is attempting to assert any tort claims against the individual federal official Defendants, he must first file a tort claim (SF-95) with the Bureau of Prisons, and after he exhausts his administrative remedies, he can file an action in federal court only against the United States under the Federal Tort Claim Act ("FTCA").  *See Banks*, 2007 WL 3096585, * 2; *Baker v. U.S.*, 2006 WL 3717382, * 5 (W.D. Pa.) ("The FTCA grants jurisdiction to the federal courts to hear suits against the United States Government for torts committed by its employees while in the scope of their employment.  *See* 28 U.S.C. § 2675(a).").

BOP's customs, policies and practices.  Plaintiff avers that unnamed prison supervisors failed to instruct, supervise and control the Defendants in such a manner that would have prevented Defendants from making false statements and filing false charges against him, concealing evidence, obstructing criminal investigations, retaliation, coercion and defamation.   (Doc. 7A, pp. 25-26). Plaintiff also claims that unnamed BOP supervisors knew of conflict of interests, *i.e.* Defendants Trgovac and McConnell had an intimate relationship before, during and after Trgovac filed an incident report against him, and the investigation was conducted by Defendant McConnell over the letter Plaintiff wrote to Trgovac about his belief that they had a daughter together.  Plaintiff alleges that the staff at USP-Allenwood and BOP supervisors were well aware of the conflict of interest and that the supervisors failed to instruct, train and supervise the Defendants, which resulted in the violations of his Constitutional rights.

In his final count, Count VIII, Plaintiff raises a Ninth Amendment claim and seemingly a Pennsylvania state law claim for invasion of privacy.[10]  Plaintiff claims that Defendants forced him "to reveal private and personal information, (the past sexual encounter with Trgovac that produced a child, out of wedlock), in order to prove [his] innocence ... ."  (Doc. 7A, p. 27).  Plaintiff also claims that Defendants aided and abetted one another "in prohibiting [him] from having contact, expression and communication with [his] biological child ... ."  (*Id*.).  Plaintiff further alleges that Defendants "sought to embarrass, humiliate, and intimidate [him] through unlawful searches by forcing strip-searches for their inspection that they might glory in his flesh".  (*Id*.).

---

[10]*See* note 8.

Plaintiff requests specific amounts of compensatory and punitive damages in all of his eight counts, and these requests should be stricken.  Since Plaintiff seeks unliquidated damages, he cannot claim a specific sum of relief.  Pursuant to Local Rule 8.1, M.D. Pa., Plaintiff's request for specific monetary damages should be stricken from his amended Complaint.  *See Stuckey v. Ross*, Civil No. 05-2354, M.D. Pa., 1-9-06 Order, J. McClure.

Plaintiff asserts that this Court has jurisdiction over his claims based on *Bivens*, RICO, the First Amendment, Fourth Amendment, Fifth Amendment, Sixth Amendment, Eighth Amendment, and Ninth Amendment, as well as 28 U.S.C. § 1343, § 2412  and 42 U.S.C. § 1985.[11]  (Doc. 7A, p. 2).

Plaintiff alleges that in June 1978, prior to his September 1997 federal convictions and 55-year sentence in the Eastern District of Washington, which he is now serving, and prior to Trgovac's employment with the BOP, he had consensual sexual relations with Defendant Trgovac.  Thereafter the relationship between Plaintiff and Trgovac was not continued.  As a result of their encounter, Plaintiff states that in the spring of 1979, Trgovac gave birth to a female child named Teresa Trgovac and that this child was his biological daughter.  Plaintiff did not see the child at the time of her birth, and for about the next 27 years he did not see the child or have any contact with her or Trgovac.

Plaintiff avers that when he was transferred to USP-Allenwood in September 2005, he was given a psychological intake screening interview by Defendant Trgovac, the prison psychologist.

---

[11]We find that the only subsection of § 1985 that may apply in this case is subsection (3). *See Banks v. One or More Unknown CI of FPC Canaan*, 2008 WL 2563355, *11, n. 22 (M. D. Pa.).

Plaintiff states that this was the first time in 28 years that he saw Trgovac again, that he recognized her but nonetheless, he remained silent.  Plaintiff believes Trgovac recognized him even though she did not say she did.  (Doc. 7A, pp. 3-4).  As the beginning of Trgovac's conspiracy against him, Plaintiff claims that she did not report to prison officials her prior relationship with him even though he is not even sure she recognized him.

Plaintiff asserts that during the next 13 months while he was at USP-Allenwood, he avoided Trgovac as much as possible, and that when their paths crossed during 2006, as further part of her conspiracy against him, she would glare at him and occasionally bump into him, trying to encourage a response from him.  (*Id.*, p. 4).  Plaintiff also alleges as further part of Trgovac's  conspiracy against him, in early spring 2006, she escorted Teresa on a tour of USP-Allenwood. Plaintiff states that this was the first time he ever saw his daughter he had with Trgovac.  Plaintiff took this tour to mean that it was safe for him to contact Trgovac and ask her about their child.  (*Id.*).  On October 6, 2006, Plaintiff wrote a letter to Trgovac requesting that they meet to discuss Teresa and slid it under her office door.  (*Id.*).  On October 10, 2006, Trgovac allegedly found Plaintiff's letter to her and gave it to the SIS, the prison investigative service, and Defendant Lt. McConnell.  Plaintiff and his cell mate were then taken to the Lieutenant's office to be questioned.  Plaintiff states that at this time, he heard Trgovac tell a prison staff treatment specialist that she never spoke to Plaintiff or made eye contact with him.  (*Id.*, p. 5).

Plaintiff states that he was then interrogated for 20 minutes in a locked office without being read his *Miranda* rights, by Defendant McConnell and the prison operations Lt. (Womeldorf) about his letter to Trgovac.  Plaintiff alleges that Defendant McConnell told him he was under criminal

11

investigation and that criminal charges for black mail, extortion and threatening staff were going to be sought against him for his letter.  Plaintiff avers he told McConnell and Womeldorf that he wrote the letter to Trgovac only to satisfy years of his interest about the welfare of their child.  When Womeldorf asked Plaintiff if he was sure that Trgovac was the woman he knew 28 years earlier, Plaintiff responded that "there was a small chance [he] was mistaken but Trgovac still had the same first and last name as then ... ."  (*Id*. p. 6).

Plaintiff states that he later learned, in January 2008, that during the incident at issue, Defendant McConnell was intimately involved with Defendant Trgovac, and that this was a conflict of interest since McConnell was heading up the investigation regarding his letter.  Plaintiff alleges that this was part of the conspiracy against him.  Plaintiff also avers that the relationship between Trgovac and McConnell tainted McConnell's investigation report about the incident, it violated statutes and regulations dealing with impartiality, and it denied him "a fair and impartial process and [gave] McConnell cause for retaliation."  (*Id*.).

Plaintiff avers that Trgovac entered the Lieutenant's office during the interrogation, and without giving him his *Miranda* rights, she asked him "what's up with the letter."  Plaintiff "stated that Trgovac resembled someone [he] knew intimately 28 years ago and that [Plaintiff] meant no disrespect or offense."[12] (*Id*.).

---

[12]Insofar as Plaintiff indicates that he was entitled to *Miranda* warnings during the prison investigation and questioning of him for 20 minutes in a locked office, no such warnings were required, since Plaintiff was not physically restrained, he was not interrogated by law enforcement personnel who had authority to file criminal charges against him, and his statements were never used against him in a criminal proceeding.  In fact, Plaintiff admits that there was never a criminal investigation and no charges were ever filed regarding his contact with Trgovac *via* his October 6, 2006 letter. (Doc. 7A, p. 15).  *See Burkholder v. Newton*, 116

Plaintiff states that as part of the conspiracy against him, Trgovac fraudulently stated that "I am not that person in the letter you knew twenty eight (28) years ago!" (*Id*.). Plaintiff claims that Trgovac obstructed the investigation by falsely denying her relationship with him that resulted in a child. Plaintiff avers that he was then wrongfully punished for his letter to Trgovac and that a conspiracy to cover up the truth then ensued. (*Id*., p. 7).

Plaintiff states that due to the mental distress from the threat of criminal charges being filed against him, fear of retaliation and not wanting to expose Trgovac's lie, "[Plaintiff] thought it was better to admit there was a chance of mistaken identity and that [he] used poor judgment." (*Id*.). Plaintiff then states that he apologized to Trgovac even though he knew he was not mistaken about her identity.

Plaintiff states that Trgovac, using psychological strategy, twisted his apology and implied it was not sincere, abusing her profession, which amounted to cruel and unusual punishment, and that her lie and derogatory remark about his apology were used to intimidate and humiliate him in deliberate indifference to his health and safety. (*Id*., pp. 7-8).

Plaintiff alleges that as a further part of a conspiracy, Defendant McConnell again threatened him with criminal prosecution. Plaintiff states that after the meeting, he was found to be a threat to Trgovac's safety, and he was handcuffed, taken to the SHU, and locked up there. (*Id*., p. 8).

---

Fed. Appx. 358 (3d Cir. 2004).
We note that Plaintiff makes inconsistent averments as to whether a criminal investigation by the FBI was ever commenced. *See* Doc. 7A, p. 8, ¶ 37. and p. 15, ¶ 56. However, plaintiff is clear that no criminal charges were filed against him over his letter to Trgovac.

Plaintiff states that Defendants Trgovac and McConnell, and Lt. Womeldorf, improperly continued to question him even though the incident was subject to a criminal investigation, and the federal regulations governing criminal investigations were not followed.  Plaintiff indicates that a misconduct report was issued against him by Defendant Trgovac and that the UDC and DHO proceedings violated the law.  (*Id*.).  Plaintiff states that when the criminal investigation was taken over by the FBI, Trgovac became a witness and that "[her concealment of the truth" "kept the criminal investigation from going forward."  (*Id*., ¶ 37.).  Thus, Plaintiff admits that no criminal charges were ever filed against him as a result of the incident with Defendant Trgovac.

Plaintiff avers that on October 10, 2006, he was served with an Administrative Detention ("AD") Order and that he was placed in AD and into the SHU pending an investigation for his inappropriate correspondence with a female staff member.  Plaintiff states that he was served with an incident report on October 10, 2006, related to his letter to Trgovac, and that Defendant Trgovac was the reporting officer.  Plaintiff was informed of his rights when he was given his copy of the incident report and at that time he stated that "[he] was mistaken about fathering a child with Trgovac."  (*Id*., p. 9).  Plaintiff claims that he made this statement, which he believed was false, under mental distress.  Plaintiff states that he was served with a second incident report on October 11, 2006, #15522345, again with Trgovac as the reporting officer.  Plaintiff states that the second incident report was in place of the first one since the first report was defective.  Plaintiff was charged with interfering with a staff member in performance of duties (Code 298), insolence towards a staff member (Code 312), and lying or providing a false statement to a staff member (Code 313).  (*Id*., pp. 9-10).  Plaintiff avers that the incident report was false and that the charges

were not true.  Plaintiff avers that Trgovac knowingly filed the false charges against him in order to conceal her embarrassing secret past, *i.e.* "The father of [her] daughter is a convicted felon," and to implicate him in criminal conduct to cause him to receive a bad conduct transfer to another prison and to silence him.  (*Id.*, p. 10).

During his October 11, 2006 UDC hearing with respect to the incident report filed against him, Plaintiff was informed of his rights, asked if he wanted to make a statement and he waived his right to a staff representative and witnesses.  Plaintiff, for the third time, admitted that he was mistaken about Trgovac's identity, and he stated, "I made an honest mistake and I regret it.  It was a case of mistaken identity."  (*Id.*).  Plaintiff again claims that his statement was made under mental distress.  The UDC then referred the incident report to the DHO for final disposition.

On October 16, 2006, Defendant DHO Cerney held a disciplinary hearing regarding Trgovac's incident report issued against Plaintiff.  (*Id.*).  Plaintiff states as follows:

> Cerney informed Ratigan of Ratigan's rights.  Ratigan denied the charges of the incident report.  Ratigan waived staff representation.  Ratigan raised no procedural issues, nor was any documentary evidence provided for consideration by Ratigan at the hearing.  Ratigan was not provided a copy of the handwritten correspondence addressed to Trgovac which was used as evidence against Ratigan at the hearing, nor did Ratigan have access to the letter for appeal purposes.  Cerney did not provide Ratigan with verbal evidence concerning Trgovac which was presented during the DHO process, but out of Ratigan's presence, Ratigan made the following statement at the DHO hearing.  "She was someone I thought I knew when I was a kid.  I know how this could look.  I don't know what I was thinking."

(*Id.*, pp. 10-11).

Plaintiff states that Defendant Cerney asked him why he wrote the letter and Plaintiff stated that it would give Trgovac the option to respond to him. (*Id.*, p. 11). Plaintiff states that Defendant Cerney dismissed the Code 298 and Code 313 offenses, but found him guilty of the Code 312 offense for insolence toward a staff member.  As sanctions, Cerney gave Plaintiff 15 days in disciplinary segregation and disallowed 13 days GCT.  Plaintiff claims that in his disciplinary report, Cerney defamed his character.  Plaintiff states that he appealed his misconduct conviction and after his case was remanded to the prison, the conviction was expunged since the prison did not want to investigate his allegations. (*Id.*, p. 12).

On October 23, 2006, Plaintiff avers that Defendant McConnell issued a misleading investigative report about Plaintiff's incident with Trgovac and found that Plaintiff attempted to compromise staff.   Plaintiff states that McConnell lied in his report, failed to disclose his conflict of interest (*i.e.* McConnell's alleged intimate relationship with Trgovac), and left out important facts. Plaintiff states that McConnell recommended his transfer to another prison. (*Id.*).

Plaintiff avers that on November 15, 2006, a Request for his Transfer to another prison was prepared based on McConnell's investigation report and Plaintiff's conviction for the misconduct charge. (*Id.*, p. 13).

Plaintiff states that on December 13, 2006, Defendant Cerney, through a Memo, informed him that no rehearing would be held with respect to the October 11, 2006 misconduct report issued against by Trgovac, and that his misconduct conviction was going to be expunged and removed from his disciplinary file.  Plaintiff was also advised that his 13 days GCT would be re-credited. (*Id.*, p. 14).  However, Plaintiff states that the Memo indicated that the incident report

16

was not being removed from his BOP central file.

On December 14, 2006, Plaintiff states that he was advised that the incident report was removed from the BOP Sentry and his disciplinary file, but not removed from his BOP central file. Plaintiff's disallowed GCT was restored.

Plaintiff states that despite the expungement of the misconduct conviction and the removal of the conviction from his disciplinary file, he was transferred from USP-Allenwood to USP-Pollock on December 27, 2006, based on the expunged conviction and McConnell's investigation report. (*Id*.).

Thus, Plaintiff states that the Incident Report in question was expunged from his disciplinary record and that his 13 days disallowed GCT was re-credited to his sentence computation. However, Plaintiff states that the Incident Report was not expunged from his BOP central file. Plaintiff states that he was advised that he was going to be transferred out of USP-Allenwood, and on December 27, 2007, he was transferred 1800 miles away from his family to USP-Pollock. Plaintiff states that he spent a total of 78 days in the SHU at USP-Allenwood to coerce his silence, even though his disciplinary conviction was expunged and even though a criminal investigation never existed. (*Id*., p. 15, ¶ 56.). Plaintiff states that he was transferred out of USP-Allenwood even though he committed no BOP violation and that the defaming investigation report remains in his BOP central file which imposes adverse affects on him while he is in BOP custody on a continuos basis. (*Id*., p. 15).[13]

---

[13]The law is well-settled that Plaintiff has no Constitutional right with respect to being assigned any particular custody classification or being confined in any specific prison.

Plaintiff avers that in January 2008, through inmate Kahlil, he became aware that Defendants McConnell and Trgovac had an intimate relationship during the time of the incident and investigation at issue herein, which constituted a conflict of interest and denial of his due process rights. (*Id.*, pp. 15-16).[14]

As stated, Plaintiff raises eight (8) claims. As relief in each claim, Plaintiff seeks compensatory damages and punitive damages against each Defendant. (*Id.*, p. 18).[15]

---

In *Wilkins v. Bittenbender*, 2006 WL 860140, * 16 (M.D. Pa. 2006), this Court stated:

> Finally, the United States Supreme Court has held that inmates have "no legitimate statutory or constitutional entitlement" to any particular custodial classification even if a new classification would cause that inmate to suffer a "grievous loss." *Moody v. Daggett,* 429 U.S. 78, 88 n. 9, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *James v. Reno,* 39 F.Supp.2d 37, 40 (D.D.C.1999) (citation omitted) (a federal inmate "has no liberty interest in his security classification). Consequently, Defendants are entitled to entry of summary judgment with respect to Plaintiff's claims regarding the IFRP and the alleged improper increase in his custody classification.

[14]Plaintiff states that Kahlil was transferred from USP-Allenwood to USP-Pollock in the summer of 2007. Plaintiff also filed a Declaration of Kahlil in which Kahlil avers that while he was on a hungry strike in August 2006 at USP-Allenwood, Lt. McConnell threatened him for his perceived disrespectful conversation with Trgovac, and McConnell told Kahlil that Trgovac was his girlfriend. (Doc. 3, p. 1). Kahlil also avers that about one week later he saw McConnell and Trgovac hugging and passionately kissing in a prison office. (*Id.*, p. 2).

[15]Plaintiff correctly indicates that he is suing Defendants in their individual capacities since he is seeking monetary damages from them. (Doc. 7A, p. 2). Plaintiff appears to recognize that he cannot seek monetary damages against the federal Defendants in their official capacities. As the Court in *Breyer v. Meissner*, 23 F. Supp. 2d 540, 544 (E.D. Pa. 1998), stated:

> To the extent that the proposed claims seek monetary damages against the United States or individual defendants in their official capacities, the claims are barred by the doctrine of sovereign immunity. *Federal Deposit Insurance Corp. v. Meyer,* 510 U.S. 471,

Plaintiff indicates that he exhausted his BOP administrative remedies with respect to his present claims.[16]  (Doc. 7, p. 1).

## VI.  Discussion.

Initially, we find no conspiracy claim stated under 42 U.S.C. § 1985(3).  As the Court in *Garrett v. Nesbitt*, 1998 WL 531841 at *3 (E.D. Pa.)*,* stated:

> Although § 1985(3) reaches "purely private" conspiracies, no cause
> of action exists when the private conspiracy interferes
> with rights that may only be abridged by state action.
> *See Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268,
> 113 S.Ct. 753, 122 L.Ed.2d 34 (1993) (citing *Carpenters*,
> 463 U.S. at 833 (1983)).  In addition, in order to prove a
> private conspiracy under § 1985(3), the plaintiff must show that
> "some racial, or perhaps otherwise class-based, invidiously
> discriminatory animus [lay] behind the conspirators' action."
> *Id*. (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102,
> 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

---

> 475, 114 S.Ct. 996, 1000, 127 L.Ed.2d 308 (1994). Plaintiff does
> not allege that the United States has waived its immunity in this
> case. Furthermore, the Supreme Court has held that a *Bivens* action
> may not be brought against a federal agency. *Id.* 510 U.S. at 484-86,
> 114 S.Ct. at 1005-06.

[16]Plaintiff must exhaust his BOP administrative remedies with respect to each of his claims prior to filing a civil rights suit.  *Spruill v. Gillis*, 372 F.3d 218, 230 (3d Cir. 2004); *Woodford v. Ngo*, 126 S.Ct. 2378 (2006).  In *Porter v. Nussle*, 534 U.S. 516, 532 (2002), the Supreme Court reiterated that the exhaustion requirement under § 1997e(a) applies to all actions regarding prisons conditions, including civil rights  actions or actions brought pursuant to any other federal law.  The *Porter* Court held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*   However, Defendants have the burden to plead exhaustion as an affirmative defense. *See Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

> There is no presumption of discriminatory purpose,
> and a plaintiff must clearly show intentional discrimination.
> *See DeBotton v. Marple Township*, 689 F.Supp. 477, 482
> (E.D. Pa. 1988).

See also *Banks v. One or More Unknown CI of FPC Canaan*, 2008 WL 2563355, *11 (M. D. Pa.).

In *Banks*, the Court stated:

> "To establish a *prima facie* case under § 1985(3), a plaintiff must
> allege: "(1) a conspiracy; (2) motivated by a racial or class based
> discriminatory animus designed to deprive, directly or indirectly,
> any person or class of persons . . . [of] the equal protection of the
> laws; (3) an act in furtherance of the conspiracy; and (4) an injury
> to person or property or the deprivation of any right or privilege of
> a citizen of the United States." *Ridgewood Bridgeport of Educ. v. N.E.
> ex rel. M.E.*, 172 F.3d 238, 253-54 (3d Cir 1999); *see also Farber v.
> City of Patterson*, 440 F.3d 131, 134 (3d Cir. 2006); *Griffin v.
> Breckenridge*, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338
> (1971); *Brown v. Phillip Morris Inc.*, 250 F.3d 789, 805 (3d Cir. 2001);
> *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)." The *Banks*
> Court also stated that the complaint, in order to state a § 1985(3) claim,
> must allege that "'racial or class based discriminatory animus' motivated
> defendants' conduct. *See Cranbury Brook Farms v. Twp. of Cranbury*,
> 226 F.App'x 92, 95 (3d Cir. 2007) (citing *Lake v. Arnold*, 112 F.3d 682,
> 685 (3d Cir. 1997))." *Id.*

The Plaintiff has not alleged any discriminatory purpose with respect to any § 1985(3) claim

he may be asserting against Defendants.  There is no claim by Plaintiff of a discriminatory purpose

or of a class-based conspiracy.  Thus, to the extent Plaintiff may be raising a § 1985(3) claim against

all Defendants (Doc. 7A, p. 2, ¶ 1.), we recommend that it be dismissed.

*A.  Count I, RICO*

Plaintiff asserts RICO claims against all three Defendants pursuant to 18 U.S.C. §§ 1961-

1965(2).  (Doc. 7A, pp. 18-19).  Plaintiff alleges that the Defendants, through an enterprise known

as the BOP, engaged in a pattern of racketeering activity and conspired to violate his Constitutional

20

rights.  Plaintiff states that as a result of Defendants' racketeering activity, he was physically injured in that he suffered psychological distress, he was illegally detained in the SHU and, he was placed under criminal investigation.  (*Id*.).  Plaintiff states that he was also transferred to USP-Pollock as retaliation and to keep him quiet, that he was stigmatized, and that the prejudicial investigation report remains in his BOP central file.

Insofar as Plaintiff alleges that as part of their racketeering activity, Defendants committed various federal criminal acts such as tampering with a witness, extortion, and obstruction of justice, he cannot charge any Defendant with criminal violations of RICO.  (Doc. 7A, p. 19).[17]

Plaintiff's RICO claims are basically that Defendants used their official positions to illegally conspire to "obstruct justice, intimidate and tamper with a witness, provide false/fraudulent inculpatory statements, fraudulently conceal exculpatory evidence," as well as illegally detain and retaliate against him, maliciously prosecute him for extortion, and blackmail him.  Plaintiff also claims that Defendants obstructed justice, tampered with a witness, and obstructed a criminal investigation, which he claims are predicate acts establishing violations of RICO.  (*Id*., pp. 18-99).

Plaintiff asserts that his RICO claims against Defendants allege the required predicate acts of racketeering activity and he states that they performed these acts through an enterprise which is the BOP.  As stated, Plaintiff asserts RICO claims based upon violations of 18 U.S.C. §§ 1651, *et seq.*  The predicate acts of racketeering, which the Plaintiff claims were committed by Defendants and which are alleged to constitute a pattern of racketeering activity, include obstruction of a

---

[17]The Third Circuit has held that a private person could not impose RICO criminal liability on a defendant since he lacked standing to do so.  *See Conception v. Resnik*, 2005 WL 1791699, * 2, 143 Fed.Appx. 422, 425-26 (3d Cir. 2005) (Non-Precedential).

criminal investigation, tampering with a witness, fraud, falsifying government documents, extortion and obstruction of justice since they failed to properly report the incident between him and Defendant Trgovac, and they conspired to violate his Constitutional rights.  Thus, Plaintiff alleges that these predicate acts upon which he  relies to allege a pattern of racketeering activity by the Defendants is sufficient to state a private RICO action against them.

In *Brown v. Abdelhak*, 2000 WL 1201889 (E.D. Pa.) * 2, the Court stated that "[i]n order to have standing to bring a RICO claim, the plaintiff must have been injured in his business or property, *see* 18 U.S.C. § 1962, and that injury must have been proximately caused by the alleged RICO pattern."  (Citation omitted).   Additionally, the plaintiff's injury must be a concrete financial loss.  *Maio,* 221 F. 3d at 483-84.   Here, our Plaintiff's alleged injury is that Defendants' conduct caused him "psychological distress" and  that he had to spend thousands of dollars to prepare his lawsuit against them. (Doc. 7A, p. 19).  This is clearly insufficient.  We do not find that Plaintiff properly states a sufficient substantial cause of an injury to his  business or property.

As this Court stated in *Pagnotti Enterprises, Inc. v. Beltrami*, 787 F. Supp. 440, 444 (M.D.Pa. 1992):

> A "'pattern of racketeering activity' requires at least two acts of racketeering activity."  18 U.S.C. § 1961(5).  Racketeering activity is defined as (A) certain acts chargeable under state law, (B) acts indictable under specific provisions of Title 18 of the United States Code, (C) acts indictable under specific provisions of Title 29 of the United States Code, (D) any offense involving fraud in connection with a case under Title 11, fraud in the sale of securities, or the felonious manufacture or distribution of drugs, or (E) any act indictable under the Currency and Foreign Transactions Reporting Act. 18 U.S.C. § 1961(1).

We find that Plaintiff's stated claims against Defendants do not constitute predicate acts of racketeering.  First, Plaintiff contradicts himself as to whether an actual criminal investigation, that Plaintiff alleges Defendants obstructed, ever occurred.  Plaintiff initially avers that the incident with Trgovac was turned over to the FBI for criminal investigation, but he later acknowledges that the criminal investigation "in reality, never existed" and was only mentioned to intimidate him. (Doc. 7A, p. 8, ¶ 37. and p. 15, ¶ 56.).  Thus, we find that Plaintiff alleges Defendants told him he would be subjected to a criminal investigation and threatened him that criminal charges would be sought for his letter to Trgovac, but we do not find that he ever definitely states that an investigation was actually conducted by  the FBI and no grand jury ever heard the case.  Further, it is clear that no criminal charges were ever filed against Plaintiff regarding the incident with Trgovac.  Plaintiff's claim that Trgovac obstructed the prison investigation by denying her encounter with him 28 years earlier was not related to a criminal investigation.  Plaintiff avers that the threat of criminal prosecution by Defendants "forced [Plaintiff] to be a witness against [Plaintiff's] own innocence, which constitutes intimidating and tampering with a witness." (Doc. 7A, p. 9).  As stated, Plaintiff avers that under duress, he admitted at least three times that he was mistaken about fathering a child with Trgovac.  We find that  there was no tampering with a witness, *i.e.* forcing Plaintiff to be a witness against himself and to admit that he did not have a sexual encounter with Trgovac, properly alleged by Plaintiff.  Nor do we find that Plaintiff properly alleges that there was an obstruction or impediment to any official proceeding by Defendants' alleged conduct.

In order to state a claim under § 1962(c), the allegations must include (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima SPRL v. Imrez Co.*, 473 U.S. 479,

496 (1985).  *Fleet Nat. Bank v. Boyle*, 2005 WL 2455673, * 3 (E.D. Pa.).  In order to establish RICO standing, "a plaintiff must first demonstrate that the defendant committed a violation of one or more subsections of section 1962, and second, that the violation was a substantial cause of the injury to his business or property."  *Rehkop v. Berwick Healthcare Corp.*, 95 F. 3d 285, 288 (3d Cir. 1996).

As this Court in *Pagnotti* stated:

> The import of this section [§1962(c) is clear.  It applies to a person who is associated with an enterprise and who participates in the conduct of the enterprise's affairs through a pattern of racketeering activity.

787 F. Supp. at 446.

The *Pagnotti* Court also stated that:

> In the Third Circuit, the culpable "person" and the "enterprise" must be separate and distinct entities.  *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 678 (3d Cir. 1988); *Petro-Tech, Inc., v. Western Co. of North America*, 824 F.2d 1349, 1359 (3d Cir. 1987).  That is, the person charged with the RICO violation under § 1962(c) cannot be the same entity as the alleged enterprise.  *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 633 (3d Cir. 1984).

*Id.*

We find that Plaintiff has not sufficiently plead any RICO claim against Defendants under § 1962(c).  Plaintiff's allegations show that the Defendants he asserts his RICO claims against are the same entities as the alleged enterprise.  Plaintiff's attempt to distinguish the Defendants from the alleged enterprise by averring that the BOP is the enterprise, is unavailing.  Plaintiff claims that Defendants' alleged conduct caused him physical injury since he suffered psychological distress.

(*Id.*, p. 19).  He states that he was illegally detained in the SHU based on fraud and that he spent "hundreds of hours and thousands of dollars in preparing this complaint [filed in the present action] ... ." (*Id.*).[18]

In *Conception*, the Third Circuit held that "[d]espite generally alleging that Defendants conspired to commit all manner of fraud, as well as to engage in . . .  obstruction of justice, witness tempering, . . . [inmate] Conception did not explain, as was required, how defendants participated in a pattern of racketeering activity in violation of the RICO Act."  *Conception, supra*, 143 Fed. Appx. at 426.  The defendants in the *Conception* case were persons involved in the inmate's criminal and civil proceedings.  Like the *Conception* case, our Plaintiff's allegations against the Defendants center around his claims that Defendants engaged in several improper acts due to his inquiry about the welfare of his alleged daughter with Trgovac and tried to silence him about his relationship with Trgovac.  We find that Plaintiff fails to properly state Defendants' participation in

---

[18]We note that despite his claim of having spent thousands of dollars in preparing his instant law suit, Plaintiff filed an *in forma pauperis* Motion in this case, and the highest balance on his attached inmate account was under $400.00.  (Doc. 2).  Plaintiff's balance in August 2008 was $140.97.  Based on Plaintiff's own *in forma pauperis* Motion and attached account statement, we find Plaintiff's claim that he spent thousands of dollars in preparing this Complaint to be disingenuous.  Further, we will recommend that Plaintiff's *in forma pauperis* Motion be granted (Doc. 2) and that Plaintiff be directed to pay a partial filing fee immediately in the amount of 20% of $140.97.

Even if the Court allows the inmate to proceed with his action without prepayment of the filing fee under 28 U.S.C. § 1915(a), "the prisoner shall be required to pay the full amount of a filing fee."  Further, the Court must then "assess [the prisoner's financial status] and, when funds exist, collect, as partial payment of any court fees required by law, an initial partial filing fee of 20 percent of the greater of  - -   (a) the average monthly deposits to the prisoner's account; or (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint . . . ."  28 U.S.C. § 1915(b)(1).  *See Saunders v. Bright*, 2007 WL 1437489 (E.D. Pa. 2007).

a pattern of racketeering activity, and thus, he fails to state a RICO claim. *See Michtavi v. U.S.A.,* Civil No. 07-0628, M.D. Pa. (July 17, 2007 Order).

Thus, we shall recommend that Plaintiff's civil RICO claims in his Amended Complaint (Count I) as against all three (3) Defendants be dismissed for failure to state a claim.

B. *Fifth Amendment Due Process Claim, Count II*

We find that Plaintiff has pled a Fifth Amendment Due Process claim in his Count II against the three Defendants.   Since Plaintiff's misconduct charge and the conviction have been overturned, his loss of thirteen (13) days GCT has been restored, and his record was expunged, we find that Plaintiff may proceed with respect to his due process claim under the Fifth Amendment regarding the fifteen (15) days he allegedly spent in disciplinary segregation in the SHU as punishment for the overturned disciplinary violation as well as the sixty-eight (68) days he spent in the SHU under the AD Order.

As the Court in *O'Connell v. Sobina*, 2008 WL 144199, * 14 (W.D. Pa), stated:

> The Due Process Clause does not protect every change in
> the conditions of confinement having a substantial adverse impact on a
> prisoner. *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d
> 451 (1976).  The Due Process Clause shields from arbitrary or
> capricious deprivation only those facets of a convicted criminal's
> existence that qualify as "liberty interests." *Hewitt v. Helms*, 459 U.S.
> 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983); *Morrissey v. Brewer*,
> 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).  The types of
> protected liberty interests are not unlimited.  The interest must rise to
> more than an abstract need or desire and must be based on more than a
> unilateral hope.  Rather, an individual claiming a protected interest
> must have a legitimate claim of entitlement to it. *Greenholtz v. Inmates
> of Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct.
> 2100, 60 L.Ed.2d 668 (1979) (citation omitted).

>Thus, the threshold question presented by Plaintiff's claims is
>whether Defendants' actions impacted a constitutionally-protected
>interest.  A liberty interest may arise either from the Due Process
>Clause itself, or from a statute, rule, or regulation.  *Hewitt*, 459 U.S. at
>466.  A liberty interest inherent in the Constitution arises when a
>prisoner has acquired a substantial, although conditional, freedom such
>that the loss of liberty entailed by its revocation is a serious deprivation
>requiring that the prisoner be accorded due process.  *Gagnan v.
>Scarpelli*, 411 U.S. 778, 781, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

The *O'Connell* Court further stated:

>[I]n *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132
>L.Ed.2d 418 (1995) . . . the Supreme Court pronounced a new standard
>of determining whether prison conditions deprive a prisoner of
>a liberty interest that is protected by due process guarantees.
>Specifically, the Supreme Court held that prison conditions do not impact
>a protectable liberty interest unless they result in an *"atypical and
>significant hardship on the inmate in relation to the ordinary incidents of
>prison life."*  *Sandin*, 515 U.S. at 483 (emphasis added).

*Id.* at * 15.

We find that Plaintiff's allegations surrounding his due process claim and the fifteen (15) days

he spent in disciplinary segregation with respect to the expunged misconduct violation conviction

as well as the sixty-eight (68) days he spent in the SHU under the AD Order may be a prison

condition that results in an "atypical and significant hardship on the inmate in relation to the

ordinary incidents of prison life."  *Sandin*, 515 U.S. at 483.  Plaintiff's allegations sufficiently show

the invalidity of his fifteen-day disciplinary segregation confinement.  Plaintiff also claims that the

investigation report of McConnell and the record of it in his BOP central file continue to have

adverse effects on him.  (*Id.*, p. 15).

Recently, this Court in *Supples v. Burda*, Civil No. 07-1560, M.D. Pa., 10-26-07

Memorandum (J. Caldwell), slip op. pp. 6-7, 2007 WL 3165537, stated:

> In *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383
> (1994), the Supreme Court clarified the interplay between habeas and
> civil-rights claims.  The Court ruled that a section 1983 claim for
> damages does not accrue "for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid," until the
> plaintiff proves that the "conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by
> a state tribunal authorized to make such determination, or called
> into question by a federal court's issuance of a writ of habeas
> corpus."  *Id.* at 486-87, 114 S.Ct. at 2372, 129 L.Ed.2d at 394
> (footnote omitted).

> *Heck* has been extended to requests for declaratory and
> injunctive relief.  *See Edwards v. Balisok*, 520 U.S. 641, 117
> S.Ct. 1584, 137 L.Ed.2d 906 (1997) (*Heck* bars a section 1983
> action seeking damages and declaratory relief which challenges
> a prison disciplinary hearing forfeiting good-time credits).  As
> the Court explained in *Wilkinson v. Dotson*, 544 U.S. 74, 81-82,
> 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005) (emphasis in original):
> "a state prisoner's § 1983 action is barred (absent prior
> invalidation) - no matter the relief sought (damages or equitable
> relief), no matter the target of the prisoner's suit (state conduct
> leading to conviction or internal prison proceedings)  - *if* success
> in that action would necessarily demonstrate the invalidity of the
> confinement or its duration."  As the Third Circuit has summarized
> the holding of *Heck*: "where success in a § 1983 action would
> implicitly call into question the validity of conviction or duration
> of sentence, the plaintiff must first achieve favorable termination of
> his available state or federal habeas remedies to challenge the
> underlying conviction or sentence."  *Williams, supra*, 453 F.3d at 177
> (Emphasis added).

*See also Walker v. Zenk*, Civil No. 01-1644, M.D. Pa., 2-7-08 Memorandum slip op. pp. 25-28.

Plaintiff Ratigan's allegations necessarily demonstrate, for present screening purposes, the

invalidity of his SHU  confinement for fifteen (15) days as well as the 68 days he spent in the SHU

under the AD Order.  Plaintiff also avers that he has achieved a favorable termination regarding his disciplinary conviction since it was overturned when he appealed it to the BOP.  As this Court in *Walker* stated:

> The rule established by the line of cases including *Heck* and *Edwards* is that a prisoner's civil rights action is barred  - - regardless of the relief sought and regardless of the circumstances giving rise to the claim  - - if success in that action would necessarily demonstrate the invalidity of confinement or the duration of confinement.  *Wilkinson*, 544 U.S. at 81-82.

*Id.*, slip op. p. 27.  *See also Howard v. BOP*, 2008 WL 318387, * 18 (M.D. Pa.).

Our Plaintiff's success with respect to his due process claim necessarily invalidates the DHO's October 2006 finding of guilt and necessarily implies the invalidity of the sanctions he received, including the 15-day disciplinary segregation sanction.  Plaintiff states that, after remand by the BOP for rehearing to DHO Cerney, the charge of which he was convicted and served a disciplinary sentence (*i.e.* Code 312 offense) was dropped, and his GCT restored and his disciplinary record (not his central BOP file record) were expunged.  Plaintiff is not requesting relief that would alter the term of his confinement since his lost GCT was restored. However, Plaintiff's allegations necessarily imply the invalidity of the disciplinary sanctions imposed on him.  Thus, Plaintiff's due process claim does not appear to be *Heck*-barred, insofar as Plaintiff seeks monetary damages for the fifteen (15) days he spent in disciplinary segregation as punishment due to the overturned misconduct conviction, as well as the sixty-eight (68) days he spent in the SHU under the AD Order.  Therefore, we shall recommend that Plaintiff be permitted to proceed with this due process claim (Count II) as against the three Defendants.

C.  *Count III, First Amendment Free Speech and Right to Access to Courts Claims*

Plaintiff states that Defendant Trgovac's alleged actions of "denying [him] information needed to contact [his] daughter for expression and communication, and punishing [him] for a benevolent inquiry, deprived [him] of [his] first amendment rights to freedom of expression and communication with [his daughter] ... ." (Doc. 7A, p. 22).  Plaintiff also avers that Defendant McConnell "in illegally detaining, placing and keeping [him] in the SHU under false pretenses, resulted in [Plaintiff ] being separated from [his] personal legal property, effectively denying [Plaintiff] access to the courts ... .  " (Doc. 7A, p. 22).[19]

We find that the alleged actions by Defendant Trgovac towards Plaintiff and the alleged denial of his need to contact a girl who he thought was his daughter do not amount to a First Amendment free speech claim, and do not rise to the level of a Constitutional violation.  Plaintiff's own allegations show that he made repeated statements to prison officials, including Defendant McConnell and Lt. Womeldorf, that he "was mistaken about fathering a child with Defendant Marie Trgovac."  However, he claims that these statements were made under duress due to threats of criminal charges being filed against him.  In any event, regardless of now re-asserting that Trgovac was indeed the mother of his daughter, that he was not mistaken about her identity, and that she was lying when she said  that she did not ever know him, Plaintiff's allegations do not state a First Amendment free speech claim.

---

[19]Plaintiff's Count III under the First Amendment is not asserted as against  Defendant DHO Cerney.

Plaintiff asserts that Defendant Trgovac denied him his right to contact his daughter he believed he had with Defendant Trgovac and that Trgovac punished him for trying to inquire about their daughter.   Plaintiff alleges that Defendant McConnell threatened to institute criminal charges against him if he did not admit that he was mistaken about his prior relationship with Defendant Trgovac.  Plaintiff states that he  had no relationship at all with his alleged daughter from her birth in 1979  until 2006, when he saw Defendant Trgovac give Teresa a tour at USP-Allenwood. Plaintiff simply alleges that after the woman he believes is Defendant Trgovac told him she was pregnant with his child in July 1978, it was mutually decided between the two that they  would not continue the relationship. (*Id.*, p. 3).   Plaintiff states that he offered to pay child support and he requested visitation to see the child, but that Defendant Trgovac denied his requests and she refused to give the child his last name.  Plaintiff had no further contact with Trgovac or her daughter since he claims that he could not find them until his transfer to USP-Allenwood in 2005.  (Doc. 7A, p. 3).[20]  Thus, from 1978 through his transfer to USP-Allenwood on September 1, 2005, Plaintiff did not see Defendant Trgovac or his alleged daughter at any time, and he did not pay child support or seek visitation rights.  Further, Plaintiff offers no proof that Teresa is his daughter other than his suspicion that she is and his belief that Trgovac was the woman he met one night at a high school graduation party in June 1978.

Based on Plaintiff's own allegations, we find that he has failed to properly state a claim under the First Amendment.  Plaintiff avers that Defendant Trgovac interfered with his attempt to contact

---

[20]Plaintiff clearly had legal recourse, and legal process was available under Pennsylvania law to seek visitation rights to a biological child.

a woman (27 years old in 2006 (Teresa) he thought was his daughter, but he never had any relationship with Teresa in the first place.  Plaintiff states that since he was the father of Trgovac's daughter, he needed to contact to his daughter after the 28-year lapse in time.  Plaintiff contends that since criminal charges were threatened against him, he repeatedly disavowed his claim regarding his relationship with Trgovac and his fatherhood of her daughter.

Plaintiff alleges that Defendant Trgovac violated his First Amendment right to free speech due  to her denial of his access to his (27-year-old) daughter, whom has has never seen, and he never had any parental rights or visitation rights permitting him to see her.  Plaintiff claims that Defendant Trgovac's conduct deprived him of his right to speak with his daughter.  First, Plaintiff has not even alleged that his paternity of Trgovac's daughter was ever legally established.  In fact, Plaintiff indicates  that he never asserted his parental rights nor challenged Trgovac's denial of his parental rights since he could not locate Trgovac.  (*Id.*, p. 3).  Rather, Plaintiff seems to assume that, since he recognized Trgovac as the woman with whom he had a sexual relationship with in 1978, she is the mother of his daughter.

Additionally, Plaintiff never had any right to visitation with his daughter he alleges he has with Defendant Trgovac.  Plaintiff's alleged daughter was about 27 years old at the relevant  time of this case.  Plaintiff claims that Defendant Trgovac, by denying him information he needed to contact his alleged daughter, and by punishing him for his letter of inquiry about Teresa, violated his First Amendment right to free speech.

The Court in *Abuhoran v. Morrison*, 2005 WL 2140537, * 7(E.D. Pa. 2005), stated:

> I will assume that plaintiffs intend to proceed under the line of
> cases that have established a fundamental substantive due process right

to association among family members. *See, e.g., Moore v. East Cleveland,* 431 U.S. 494, 503-04, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977) (plurality opinion) (invalidating a zoning ordinance that intruded on family living arrangements because "the Constitution protects the sanctity of the family"). When prisoners have attempted to invoke these cases to obtain family visitation rights, courts have uniformly held that the constitution does not confer a right to visitation upon prisoners and their family members.FN31 *See Mayo v. Lane,*867 F.2d 374, 375-76 (7th Cir.1989) ("Prison necessarily disrupts the normal pattern of familial association, so lawful imprisonment can hardly be thought a deprivation of the *right* of relatives to associate with the imprisoned criminal.") (emphasis in original) (citation omitted); *Neumeyer v. Beard,* No.02-2152, 2003 U.S. Dist. LEXIS 24066, at *10-11 (M.D.Pa. Nov. 20, 2003) ("It is well-settled that convicted prisoners, their family and spouses have no constitutional right to visitation."); *Africa v. Vaughn,* 1996 U.S. Dist. LEXIS 1622, at *1 (E.D.Pa. Feb. 14, 1996) (same); *cf. Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977) ("The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution. Equally as obvious, the inmate's status as a prisoner' and the operational realities of a prison dictate restrictions on the associational rights among inmates." ). If prisoners have no constitutional right to receive visits from family members who are not incarcerated, they certainly have no protected right to associate with family members who are incarcerated. Hence, because plaintiffs have failed to allege an underlying constitutional violation to support their *Bivens* action, I will dismiss their claim for injunctive relief challenging the BOP's separation" assignments under Federal Rule of Civil Procedure 12(b)(6). FN32

> FN31. Courts have also rejected attempts by prisoners to obtain family visitation rights under the First Amendment. *See Thorne v. Jones,* 765 F.2d 1270, 1274 (5th Cir.1985) ( "Such incarcerated persons as [plaintiffs] maintain no right to simple physical association -with their parents or with anyone else -grounded in the first amendment.")

> FN32. To the extent that plaintiffs intend to argue that they have a protected liberty interest under the procedural component of the due process clause in being assigned to a particular institution, or in a particular security classification, the Supreme Court has specifically rejected these arguments. *See Moody v. Daggett,* 429 U.S. 78, 88, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976)

33

> ("Congress has given federal prison officials full discretion to control [prisoner classification and eligibility for rehabilitative programs] ... and petitioner has no legitimate statutory or constitutional entitlement sufficient to invoke due process.); *Meachum v. Fano,* 427 U.S. 215, 223-29, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) (determining that no due process protections were required upon the discretionary transfer of state prisoners to a prison with less desirable living conditions); *see also Hewitt v. Helms,* 459 U.S. 460, 468, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983) ("It is plain that the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence.) [21]

Thus, our Plaintiff had no protected right to associate with Teresa.

In *Neumeyer v. Beard*, 301 F. Supp. 2d 349, 351-52 (M.D. Pa. 2004), the Court stated:

> Additionally, it is well-settled that there is not a constitutional right to visitation for convicted prisoners, their family and spouses. FN3 *See, e.g.,* \*352 *Young v. Vaughn,* No. 98-C4630, 2000 WL 1056444, at \*3, 2000 U.S. Dist. LEXIS 10667, at \*8 (E.D.Pa. July 1, 2000) (holding that there is no constitutionally protected right to prison visitation" ); *Flanagan v. Shively,* 783 F.Supp. 922, 934 (M.D.Pa.1992) ( Inmates have no constitutional right to visitation ... Prison authorities have discretion to curtail or deny visitation if they deem appropriate, and no due process right is implicated in the exercise of that discretion." ); *Young v. Vaughn,* No. 98-C4630, 2000 WL 1056444, at \*2, 2000 U.S. Dist. LEXIS 10667, at \*5 (E.D.Pa. July 31, 2000) ( "Convicted prisoners, their family and spouses have no constitutional right to visitation." ); *Africa v. Vaughn,* No. 96-C0649, 1996 WL 65445, 1996 U.S. Dist. LEXIS 1622, at \*1 (E.D.Pa. Feb. 14, 1996) ("Neither convicted prisoners nor their family members have an inherent constitutional right to visitation.").(footnote omitted).

Accordingly, our Plaintiff had no constitutional right to visitation from Teresa.

---

[21]To the extent Plaintiff Ratigan claims that, after the SIS investigation, he was transferred to a prison far away from his family (USP-Pollock), as noted above, he had no Constitutional right to confinement in any particular prison.

Moreover, we do not find that Plaintiff has stated a viable First Amendment free speech claim with respect to Defendant Trgovac's alleged conduct after he wrote his letter to Defendant Trgovac to inquire about the welfare of their daughter after a 28-year hiatus.[22]  As the Court stated in *Jones v. Brown*, 461 F. 3d 353, 358 (3d Cir. 2006), "[t]he First Amendment, ..., prohibits [the government] from 'abridging the freedom of speech.'"  However, we find that Plaintiff, a federal inmate, had no First Amendment right to send correspondence to a BOP female staff member working at the prison in which Plaintiff was confined to inquire about a daughter, whom Plaintiff had not seen in 27 years.  As stated, Plaintiff admits that he had no parental relationship with Teresa, and had no visitation rights while she was a minor.  Plaintiff merely alleges that he believes Teresa is his child even though the staff member denied any relationship with Plaintiff and Plaintiff admitted several times that he was mistaken about Trgovac's identity.  Plaintiff avers that Defendant Trgovac has denied she ever had relations with him and denied that he is the father of any child she may have.  Plaintiff claims that Defendant Trgovac is lying about her 1978 relationship with him.  The BOP clearly has legitimate penological interests, including the safety of staff, to prohibit a male inmate's contact with a female staff member, especially when the female staff member asserts that she does not know the inmate.  There is clearly a reasonable connection between the legitimate penological interests and the policy of prohibiting a male inmate's inappropriate contact with a female staff member.

---

[22]The Court in *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 528 (E.D. Pa. 2002), stated that "Inmates clearly retain protections afforded by the First Amendment, ... ."  *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (citation, punctuation omitted).

In any event, we do not recommend that Plaintiff be permitted to proceed with his First Amendment free speech claim in order to conduct a full analysis under *Fraise v. Turner*, 283 F. 3d 506 (3d Cir. 2002), since we do not find that Plaintiff has stated any restrictions were placed on any recognizable First Amendment rights. Plaintiff's Amended Complaint, on its face, simply does not implicate his First Amendment free speech rights with respect to his claim that Trgovac should have given him information about the woman he believed was his daughter. Nor does Plaintiff's claim that he should not have been punished for his letter to Trgovac implicate his First Amendment rights. Since Plaintiff's First Amendment free speech rights are not implicated, there is no necessity for a *Turner* analysis. *See Turner*, 482 U.S. at 89.

As stated, we do not find that the prohibition of Plaintiff sending his letter to a female staff about an alleged sexual relationship 28 years earlier restricts Plaintiff's constitutionally-protected right of First Amendment free speech in the first place. Nor do we find that under the First Amendment, Trgovac was obliged to give Plaintiff information about her daughter Teresa so that he could contact Teresa even though Plaintiff believed he was Teresa's father.

Therefore, we will recommend that Plaintiff's First Amendment free speech claim (Count III) against Defendant Trgovac be dismissed.

In Count III, Plaintiff also asserts a First Amendment denial of access to court claim against Defendant McConnell. Plaintiff avers that by illegally detaining him in the SHU under false pretenses, Defendant McConnell caused him to be separated from his legal property and "effectively den[ied Plaintiff] access to the courts." (*Id.*, p. 22). Plaintiff does not state that this conduct by Defendant McConnell caused him any actual injury to any court case he had, and we

36

take judicial notice that Plaintiff has had unfettered access to this Court based on his first lawsuit, #08-0301, M.D. Pa., which he voluntarily dismissed, and based on his present case in which he has filed both an original Complaint and an Amended Complaint.

As the Third Circuit Court stated in *Salkeld v. Tennis*, C.A. No. 07-1776, (3d Cir. 9-13-07), slip op. p. 3, 2007 WL 2682994, * 1 (3d Cir. 2007) (Non-precedential):

> An inmate alleging a violation of *Bounds v. Smith*, 430 U.S. 817 (1977), must show an actual injury, a requirement that derives from the doctrine of standing. *Lewis v. Casey*, 518 U.S. 343, 349 (1969). Specifically, the inmate must show that the alleged shortcomings in the prison policy "hindered his efforts to pursue a legal claim." *Id.* at 351. *See also Reynolds v. Wagner*, 128 F.3d 166, 183 (3d Cir. 1997) (no First Amendment right to subsidized mail). However, the injury requirement is not satisfied by just any type of frustrated legal claim; the legal claim must relate to a direct or collateral challenge to a prisoner's sentence of conditions of confinement. *Lewis*, 518 U.S. at 349 ("Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.") (emphasis in original).

In *O'Connell*, 2008 WL 144199, * 10, the Court stated:

> In *Christopher v. Harbury*, 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court set forth specific criteria that a court must consider in determining whether a plaintiff has alleged a viable claim of right to access to the courts. Specifically, the Supreme Court held that, in order to state a claim for denial of access to courts, a party must identify all of the following in the complaint: 1) a non-frivolous, underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Christopher*, 536 U.S. at 415.

In his Amended Complaint, Plaintiff does not allege that Defendant McConnell's conduct frustrated any litigation which he had. Nor does Plaintiff aver that any underlying claims he had

were hindered by Defendant McConnell's conduct, and that these claims were meritorious and that "the 'arguable' nature of the underlying claim[s] [were] more than hope." *Christopher,* 536 U.S. at 417. Thus, no actual harm to any case of Plaintiff is alleged to have occurred as a result of Defendant McConnell's conduct in this case. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002)(requiring allegations that the document inmate was unable to file was non-frivolous to state an access to courts claim); *Romansky v. Stickman*, 147 Fed. Appx. 310, 312 (3d Cir. 2005)(Non-Precedential); *O'Connell*, 2008 WL 144199, * 10; *Banks v. One or More Unknown CI of FPC Canaan*, 2008 WL 2563355, *8 (M. D. Pa.)(to state a claim of First Amendment denial of access to courts, inmate must plead that he suffered an "actual injury" as a result of Defendants' alleged unconstitutional conduct ).

Finally, Plaintiff has failed to meet the third requirement identified in *Christopher* since he has not specifically identified "a remedy that may be awarded as recompense in a denial-of-access case that would not be available in any other future litigation." *O'Connell*, 2008 WL 144199, * 10 citing *Christopher* at 414. Plaintiff has a remedy available in future litigation regarding his claim that he was wrongfully placed in the SHU by Defendant McConnell and he is pursuing this remedy in his present case.

Thus, we shall recommend that Plaintiff's First Amendment access to court claim against Defendant McConnell be dismissed. We will also recommend that Plaintiff's Count III of his Amended Complaint be dismissed entirely.

*D.  Fourth Amendment Illegal Seizure Claim, Count IV*

In Count IV, Plaintiff alleges as follows:

> The actions of McConnell in seizing and illegally detaining Ratigan
> based on falsified and concealed evidence provided by Trgovac, in
> conjunction with information obtained under coercion, intimidation
> and threats of criminal prosecution, contrary to truth, to obtain
> probable cause and implicate Ratigan in criminal conduct, under
> false pretenses, in violation of [the Fourth Amendment] . . .

(Doc. 7A, p. 23, ¶ 85.).[23]

Thus, Plaintiff claims that he was illegally seized and detained in the SHU at USP-Allenwood by Defendant McConnell based on false and concealed evidence provided by Defendant Trgovac in violation of his Fourth Amendment right.   The false and concealed evidence Plaintiff alleges Defendant Trgovac provided was that she did not know him and did not have an intimate relationship with him in 1978.

In *Johnson v. Derose*, 2007 WL 1074507, * 12 (M.D. Pa. 2007), the Court stated:

> The applicability of the Fourth Amendment "turns on whether the
> person invoking its protection can claim a justifiable, a reasonable, or
> a legitimate expectation of privacy that has been invaded by
> government action." *Hudson v. Palmer*, 468 U.S. 517, 525 (1984)
> (citation and internal quotation omitted).
>
> Convicted prisoners confined in prison do not forfeit all constitutional
> protections. *Bell*, 441 U.S. at 545.  Retention of certain constitutional
> rights by prison inmates does not preclude restriction and limitation
> of those rights. *Id* at 545-46. "[M]aintaining  institutional security and
> preserving internal order and discipline are essential goals that may
> require limitation or retraction of the retained constitutional rights

---

[23]Plaintiff's Count IV under the Fourth Amendment is not asserted as against Defendant DHO Cerney.

of both convicted prisoners and pretrial detainees." *Id*. at 546.
Prison officials are entitled to wide-ranging deference in implementing
these recognized essential penological interests. *Bell*, 441 U.S. at 547.

[T]he problems that arise in the day-to-day operation of a
corrections facility are not susceptible of easy solutions.  Prison
administrators therefore should be accorded wide-ranging
deference in the adoption and execution of policies and practices
that in their judgment are needed to preserve internal order and
discipline and to maintain institutional security.

In *Goldhaber v. Higgins*, 2007 WL 2907209, * 23 (W.D. Pa. 2007), the Court stated:

While prisoners do not lose all of their constitutional rights as a
consequence of their incarceration, it cannot be doubted that
"imprisonment carries with it the circumscription or loss of many
significant rights." *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct.
3194, 3199, 82 L.Ed.2d 393, 401 (1984).  Imprisonment does not
automatically deprive an inmate of all constitutional rights. *Beard v.
Banks*, - - - U.S. - - -, - - -, 126 S.Ct. 2572, 2577, 165 L.Ed.2d 697,
704 (2006).  Nevertheless, due to the very nature of incarceration,
it is difficult to characterize a search or seizure occurring in the
prison context as "unreasonable" within the meaning of the Fourth
Amendment. *Hudson*, 468 U.S. at 525-526, 104 S.Ct. at 3200,
82 L.Ed.2d at 402-403.  In *Hudson v. Palmer*, 468 U.S. 517, 527-528,
104 S.Ct. 3194, 3201, 82 L.Ed.2d 393, 404 (1984), the Supreme Court
declared that "[a] right of privacy in traditional Fourth Amendment terms
is fundamentally incompatible with the close and continual
surveillance of inmates and their cells required to ensure institutional
security and internal order." Since *Hudson*, there has been considerable
uncertainty as to whether prison inmates are *ever* entitled to Fourth
Amendment protection. *Vernonia School District 47J v. Acton*, 515 U.S.
646, 681, 115 S.Ct. 2386, 2404, 132 L.Ed.2d 564, 592 (1995)
(O'Connor, J., dissenting) (noting that it is not clear whether people in
prison categorically lack the protections of the Fourth Amendment);
*Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct.  1865, 1871, 104
L.Ed.2d 443, 455 (1989) ("Our cases have not resolved the question
whether the Fourth Amendment continues to provide individuals with
protection against the deliberate use of excessive force beyond the
point at which arrest ends and pretrial detention begins, and we do
not attempt to answer that question today.").

The *Goldhaber* Court also stated:

> "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement through means intentionally applied." *Brendlin v. California*, - - - U.S. - - -, - - -, 127 S.Ct. 2400, 2405, 168 L.Ed.2d 132, 138 (2007) (internal citations, quotation marks and emphasis omitted).  At the time of the action complained of in this case, Goldhaber's freedom of movement had already been terminated, and he certainly did not end up in prison by accident.  Consequently, he had already been "seized" for purposes of the Fourth Amendment, and the Court cannot conceive of a situation in which an incarcerated inmate such as Goldhaber could be subjected to a distinct Fourth Amendment seizure under the facts alleged in the Amended Complaint.   It is not clear that a seizure in the prison context could ever violate the Fourth Amendment, even if it is assumed that it is somehow possible for an incarcerated prisoner to be seized.  *Elliot v. Lynn*, 38 F.3d 188, 191, n. 3 (5th Cir. 1994) (distinguishing between cell searches and seizures of prisoners through an official's use of excessive force, which never violate the Fourth Amendment, and body cavity searches of prisoners, which may violate the Fourth Amendment under certain circumstances).

*Id.*

The *Goldhaber* Court concluded:

> "Since Goldhaber was already incarcerated at the time of the alleged "seizure," the Court agrees with the Defendant's contention that he was not seized for purposes of the Fourth Amendment when he was moved from Cambria County to Bedford County. (Document No. 29, pp. 12-13).  The Court does not believe that Goldhaber properly alleges a seizure.  Moreover, he makes no allegations of an illegal search.  No matter how outrageous or egregious a governmental actor's conduct may be, it cannot violate the Fourth Amendment if it does not amount to a search or seizure.  *McCoyo v. Harrison,* 341 F.3d 600, 605-606 (7th Cir. 2003).  Goldhaber alleges no

> violation fo the Fourth Amendment, and the Defendants' Motion to
> Dismiss will be granted with respect to his Fourth Amendment
> claims."

*Id.*

"The Fourth Amendment only protects individuals from unreasonable searches and seizures." *Walker v. James*, 2007 WL 210404, *8 (E.D. Pa.) (citation omitted). "Inmates possess a lower expectation of privacy than do other citizens." *Id.* (citation omitted).

Thus, since Plaintiff Ratigan was already in custody and incarcerated at USP-Allenwood at the time he claims Defendant McConnell illegally seized him and detained in the SHU based on false evidence provided by Defendant Trgovac and based on Plaintiff's forced redaction of his belief that he fathered a child with Trgovac, due to threats and coercion, we find that Plaintiff does not properly allege an illegal seizure for purposes of the Fourth Amendment.[24] Because we find Plaintiff does not state a violation of the Fourth Amendment, we will recommend that his Count IV be dismissed as against both stated Defendants. *See Goldhaber, supra; Stubbs v. DeRose*, 2006 WL 842305, *4 (M.D. Pa.)(inmate who was in custody at time of alleged assaults could not claim violation of Fourth Amendment).

---

[24]As the Court stated in *Johnson v. Derose*, 2007 WL 1074507, *40 (M.D. Pa.), "[a]n inmate has no Constitutional interest in being free from disciplinary segregation, because it is not an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'." (citations omitted). However, an inmate has a Constitutional interest in GCT and if he is subject to a loss of GCT in a disciplinary hearing, the inmate is entitled to the *Wolff* safeguards. *Id.*

### E.  Count V, Sixth Amendment Right to Effective Counsel

Plaintiff alleges that due to the conduct of all three Defendants, he was ineffective with respect to his representation of himself during all stages of administrative hearings with the BOP, including the October 2006 disciplinary charges that were filed against him.  (Doc. 7A, p. 23). Plaintiff also avers that Defendants "made [him] ineffective by willfully, intentionally, and deliberately preparing falsified and fraudulent documents and testimony, in an attempt to insure [Plaintiff's] self-representation would be ineffective" during his administrative hearings and appeals. (*Id.*, p. 24).

Initially, we note that Plaintiff admits that he was successful with respect to his October 2006 disciplinary conviction of the Code 312 (insolence toward a staff member) offense, and that his conviction was expunged from his record, except for his BOP central file.  Thus, Plaintiff concedes that despite the alleged attempt by Defendants to interfere with his *pro se* representation of himself with respect to his administrative hearings and appeals regarding the disciplinary charges filed against him, he successfully won his appeal.

Further, we do not find that Plaintiff can raise an ineffective assistance of counsel claim when he was representing himself in the context of a prison disciplinary hearing and appeals for which he was not entitled to counsel in the first place.  Thus, since the Plaintiff inmate represented himself in his prison disciplinary hearing and in his appeals, and he was not entitled to counsel at the hearing, he cannot claim that Defendants denied him his Sixth Amendment right to effective assistance of counsel.

Plaintiff was not entitled to representation by counsel with respect to his October 2006 disciplinary hearing before DHO Cerney. *See Johnson v. Derose*, 2007 WL 1074507, *40 (M.D. Pa.) ("Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a Defendant in such proceedings does not apply").)(citing *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974)). Plaintiff was only entitled to assistance from another inmate or a member of the prison staff if he was unable to represent himself. *Id*., n. 10. *See also Von Kahl v. Brennan*, 855 F. Supp. 1413, 1426 (M.D. Pa. 1994); *Hart v. Whalen*, 2008 WL 4107651, *12 (M.D. Pa.). Indeed, Plaintiff admits that he waived his right to a staff representative with respect to his October 2006 disciplinary hearing. It is also clear that Plaintiff Ratigan, based on his voluminous pleadings in both this case and in his previous case filed with this Court, is neither illiterate nor were the facts of his case extremely complex. In fact, Plaintiff prevailed on his appeal of his October 2006 disciplinary conviction, and his conviction was overturned and his record was expunged.

Since Plaintiff was not entitled to counsel at his October 2006 disciplinary hearing and since he cannot claim ineffective assistance of counsel with respect to any alleged interference with his representation of himself during his administrative hearings and appeals in the prison, we find no Sixth Amendment claim is stated. Thus, we will recommend that Count V be dismissed.

> *E. Eighth Amendment Claim for Intentional Infliction of Psychological and Emotional Torment and to Cause Bodily Harm, Count VI*

Plaintiff alleges that the conduct of all Defendants was "extreme and outrageous, exceeding all bounds of human decency." (*Id*., p. 24). Plaintiff claims that Defendants violated the Eighth Amendment by intentionally inflicting severe psychological distress on him which resulted in injury to his mind and body. Specifically, Plaintiff avers that:

> As a direct and proximate result of this conduct, Ratigan did in
> fact suffer severe psychological torment and emotional distress,
> resulting in injury to Ratigan's mind, body and nervous system,
> including but not limited to, loss of sleep, loss of weight, mental
> torment and anguish, loss of appetite, nightmares when asleep,
> flashbacks, fear of death and/or bodily harm from staff and/or
> inmates . . .

(Doc. 7A, p. 25, ¶ 93.).

As relief, Plaintiff seeks monetary damages for his "physical (psychological) injuries." (*Id.*, p. 25).   As a result of the severe psychological torment and emotional distress by the Defendants, Plaintiff states that he suffered physical injuries and mental symptoms quoted above. (Doc. 7A, p. 25).[25]

Initially, as noted above, Plaintiff cannot raise a state law Intentional Infliction of Emotional Distress ("IIED") claim in this *Bivens* civil rights action.  The FTCA, and not a *Bivens* action, is for claims against employees of the United States for money damages with respect to a tort cause of action. *See* Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346 and § 2680. *See also Banks, supra*, slip op. p. 6, n. 4[26]  Further, Plaintiff must exhaust his administrative remedies with the BOP by

---

[25]Plaintiff alleges mental injury, and this claim is not  precluded since he has alleged physical  injury. *See* 42 U.S.C. § 1997e(e).  The law is clear that an inmate may not file a federal civil rights action based on a claim of mental or emotional injury seeking compensatory damages without any prior showing of physical injury.  Here, the Plaintiff claims physical injury.  Thus, a claim for damages for emotional distress is not precluded.  *Allah v. Al-Hafeez,* 226 F.3d 247, 250-251( 3d Cir. 2000).  *See also Mower v. DCP*, 2005 WL 1322738 (M.D. Pa.).

[26]The *Banks* Court noted, "The District Court correctly construed Banks' negligence claim under the FTCA, noting that it could not consider his negligence claim under *Bivens*, because negligence is not the basis of a constitutional claim.  *See Bivens*, 403 U.S. at 392 (recognizing an implied private action for damages against federal officers alleged to have violated a citizen's *constitutional* rights)." 2007 WL 3096585, * 2, n. 4.

filing a tort claim (SF-95) prior to filing an FTCA action in District Court.[27] *Id.*, slip op. p. 5, 2007 WL 3096585, * 2.

In *Fulton v. U.S.*, 198 Fed. Appx. 210, 215 (3d Cir. 2006), the Third Circuit recognized that the FTCA only applies to the United States and that a federal inmate asserting intentional and negligent infliction of emotional distress claims must be raised against the United States.[28]

Thus, even though Plaintiff Ratigan has alleged direct physical injury he has suffered as a result of the alleged emotional distress he experienced due to the Defendants' conduct , we shall recommend that Plaintiff's claim regarding the alleged intentional infliction of emotional distress on him by Defendants be dismissed without prejudice to re-file it against the United States after Plaintiff exhausts his tort claim remedies with the BOP. *See Thomas v. Ashcroft*, 2006 WL 860136,

---

[27]The provisions of the FTCA govern all claims against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment. 28 U.S.C. §2675 (a). Plaintiff here is seeking damages for intentional infliction of emotional distress, which he claims was the result of the "severe psychological torment" inflicted upon by Defendants. With respect to any FTCA claim, the only proper party Defendant is the United States, and not the individually named Defendant employees of the BOP. *See* 28 U.S.C. §2679 (b) and (d)(1). Thus, no individual employee of the BOP can be included in an FTCA action, and only the United States can be named as Defendant. *See Banks, supra*, slip op. p. 6, 2007 WL 3096586, * 2.

[28]The *Fulton* Court stated, "[i]n Pennsylvania, [FN5] both intentional and negligent infliction of emotional distress requires a manifestation of physical impairment resulting from the distress. *See Reeves v. Middletown Athletic Ass'n.*, 866 A.2d 1115, 1122-23 (Pa. Super. Ct. 2004) (intentional); *Doe v. Philadelphia Cmty. Health Alternatives AIDS Task Force*, 745 A.2d 25, 27-29 (Pa. Super.Ct. 2000) (negligent)."

> FN5 In considering common-law claims, we apply the substantive law
> of the state in which the alleged transgression occurred. *See Richards v.*
> *United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962).
> 198 Fed.Appx. at 215.

*4 (M. D. Pa.)("Exhaustion of appropriate administrative remedies [with applicable federal agency] is a jurisdictional prerequisite to filing an FTCA claim.")(citations omitted).[29]

We now consider Plaintiff's Eighth Amendment claim.

While "[t]he Constitution 'does not mandate comfortable prisons,' ... neither does it permit inhumane ones...." *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S.Ct. 1970  (1994)(quoting *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, (1981)). "[I]t is now settled that 'the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.' " *Farmer,* 511 U.S. at 832, 114 S.Ct. 1970 (quoting *Helling v. McKinney,* 509 U.S. 25, 31, 113 S.Ct. 2475 (1993)). Under *Farmer*, conditions of confinement will violate the Eighth Amendment if the following two-prong test is met: (1) the deprivation is sufficiently serious; and (2) deliberate indifference by the prison official Defendants.  *Id*. at 834. Stated simply, an Eighth Amendment violation exists when the prisoner is denied "the minimal civilized measure of life's necessities" and the prison official acted with recklessness.  *Farmer,* 511 U.S. at 834-35 (quoting *Rhodes,* 452 U.S. at 347, 101 S.Ct. 2392); *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321 (1991). In order to find an Eighth Amendment violation regarding conditions of confinement, the evidence must show that the prison official was "both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837.

---

[29]We also note, to the extent Plaintiff may be deemed as raising a defamation claim regarding the SIS investigation conducted and the report issued by Defendant McConnell as a result of his letter to Defendant Trgovac, that this claim be dismissed without prejudice to re-file it after Plaintiff exhausts his tort claim remedies with the BOP.

Insofar as Plaintiff's allegations in Count VI are construed as raising an Eighth Amendment conditions of confinement claim, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)(citation omitted).  We do not find that Plaintiff has stated a viable Eighth Amendment conditions of confinement claim against any Defendant based on his allegations which we have fully detailed above.  Additionally, we do not find that Plaintiff has stated a cognizable Eighth Amendment cruel and unusual punishment claim.

In *Walker v. James*, 2007 WL 210404, *8, the Court stated that "[t]he Eighth Amendment prohibits infliction of cruel and unusual punishment."   Further, "[a] violation of the Eighth Amendment occurs only when the alleged punishment is 'objectively, sufficiently serious.'" *Id*. (citation omitted).  We do not find that Plaintiff has stated a viable Eighth Amendment cruel and unusual punishment claim against any Defendant based on his allegations which we have fully detailed above.

Therefore, we will recommend that Plaintiff's Eighth Amendment claims in Count VI be dismissed.

### F. Count VII, Failure to Properly Instruct, Supervise, Control and Discipline

Plaintiff states that all of the Constitutional violations which he alleges were committed by Defendants in his Amended Complaint were the result of the failure by BOP superiors to instruct, supervise, control and discipline Defendants.  Plaintiff bases his Count VII on § 1331.  (Doc. 7A, pp. 25-26).  Plaintiff states that the alleged Constitutional violations by Defendants were only possible due to the BOP's policies and practices "whereby supervisors failed to instruct, supervise,

control and discipline Defendant officers and try to prevent the [Defendants from] making false fraudulent statement/charges, concealing evidence, engaging in personal conflicts of interest, witness tampering, obstructing justice, obstructing a criminal investigation, enriching themselves, violating *Miranda*, retaliation, coercion, intimidation and defamation... . " (*Id*.).  Plaintiff claims that once the SIS at the prison knew of the security breach caused by Defendant Trgovac for over 13 months regarding the alleged cover-up of her prior relationship with Plaintiff and her alleged relationship with Defendant McDonnell, it should have informed the OIG so that an investigation could have been conducted.  (*Id*., p. 26).  Plaintiff claims that BOP officials, not named as Defendants herein, failed to investigate and report the misconduct of the Defendants that he has alleged occurred, and thus made sure that the cover up was complete.  (*Id*.).

Initially, we note that even if Defendant Trgovac filed a false misconduct charge against Plaintiff in October 2006 as he claims, this does not state a Constitutional claim.  Thus, if Plaintiff is deemed as claiming that Defendant Trgovac's October 11, 2006 Incident Report was fabricated, this does not state a constitutional claim because the filing of a false misconduct report does not constitute a violation of an inmate's constitutional rights.  In *O'Connell v. Sobina*, 2008 WL 144199, * 16 (W.D. Pa.), the Court stated that:

> A prisoner does not have a constitutional right to be free from
> being falsely or wrongly accused of conduct that may result in
> the deprivation of a protected liberty interest.  *Freeman v. Rideout*,
> 808 F.2d 949, 951 (2d Cir. 1986), *cert. denied*, 485 U.S. 982,
> 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988).  In other words, the mere
> filing of false charges against an inmate does not constitute a *per se*
> constitutional violation.  *Id*.

*See also Wesley v. Dombrowski*, 2004 WL 1465650 *7 (E.D. Pa.).

Plaintiff has not named the BOP supervisors of Trgovac, McConnell and Cerney as party Defendants in this case.  Further, the named Defendants cannot be claimed to have failed to properly train, supervise and discipline themselves with respect to their alleged conduct which Plaintiff states violated his Constitutional rights.

Moreover, to the extent that Plaintiff claims that customs, policies and practices of the BOP in failing to properly train and supervise the Defendants caused the Constitutional violations he alleges in this case, the BOP, as a federal agency, is not a proper Defendant in a *Bivens* action.  *See Banks v. Roberts*, 2007 WL 3096585, *2(inmate's claims for damages arising from alleged Constitutional violations by individual federal Defendants cannot be asserted against the United States or its agencies)(citing *F.D.I.C. v. Meyer*, 510 U.S. 471, 485 (1994)).  Additionally, the BOP policy manual is not a basis for a Constitutional claim.  *See Gross v. Warden*, 2008 WL 1815307, * 2, n. 2 (M.D. Pa.).

Since Plaintiff has not stated the personal involvement of the three named Defendants in his Amended complaint with respect to his Count VII claim, namely  that their alleged conduct which violated his Constitutional rights was due to the failure of BOP supervisors to properly instruct, supervise, control, and discipline the Defendants, we find that Count VII should be dismissed as against the Defendants.  *See Henderson v. Bussanich*, 2006 WL 3761998 (M.D. Pa.).

G.  *Count VIII, Ninth Amendment Violation, Malicious Invasion of Privacy*

As his final claim in his typed 28-page, 100-paragraph Amended Complaint, Plaintiff alleges that the Defendants "sought to aid and abet one another in forcing [him] to reveal private and personal information [about himself], (the past sexual encounter with Trgovac that produced a child,

out of wedlock), in order to prove [Plaintiff 's] innocence, ... " in violation of his Ninth Amendment rights.  (*Id.*, p. 27).  Plaintiff also avers that Defendants violated his Ninth Amendment rights by "prohibiting [him] from having contact, expression and communication with [his] biological child" and by embarrassing, humiliating and intimidating him "through unlawful searches by forcing strip-searches for their inspection that they might glory in his flesh."  (*Id.*).

As discussed above, we do not find that Plaintiff has stated a violation of his First Amendment rights or his Fourth Amendment rights.  We do not repeat this discussion.  Suffice to say that, insofar as Plaintiff claims that Defendants forced him to reveal private information about himself with respect to his alleged past sexual encounter with Trgovac 28 years earlier and to reveal that he had child with Trgovac out of wedlock, Plaintiff admits that he first voluntarily publicized this information and provided this information about himself when he wrote his letter to Trgovac on October 6, 2006.  Also, we have found that Plaintiff has not stated a claim that his First Amendment right to free speech was violated by the Defendants preventing him from obtaining information and contacting Trgovac's daughter.  Nor do we find that by simply stating Defendants tried to humiliate and embarrass him by forcing him to undergo strip searches implicates a violation of his Fourth Amendment rights.  *See Goldhaber v. Higgins*, 2007 WL 2907209, *23 (W. D. Pa.)(citing *Ostrander v. Horn*, 145 F. Supp. 2d 614, 620 (M.D. Pa. 2001)("indicating that while inmates have no general Fourth Amendment right to be free of strip searches, such searches must be 'conducted in a reasonable manner' in order to be constitutionally permissible.").  While Plaintiff avers that he was forced to have strip searches so that Defendants "might glory in his flesh," he does not allege that the searches were actually performed by any Defendant or that they were conducted

in an unreasonable manner.

At the outset, as stated above, Plaintiff cannot raise a state law invasion of privacy claim in this *Bivens* civil rights action.  As discussed, the FTCA, and not a *Bivens* action, is for claims against employees of the United States for money damages with respect to a tort cause of action.  *See* Federal Tort Claims Act ("FTCA"), 28 U.S.C.  § 1346 and § 2680.  *See also Banks, supra*,  2007 WL 3096585, * 2.  Thus, we shall recommend that Plaintiff's state law invasion of privacy  claim be dismissed without prejudice to re-file it after Plaintiff exhausts his tort claim remedies with the BOP.[30]

We find that Plaintiff had no expectation of privacy with respect to the October 6, 2006 letter he wrote to Defendant Trgovac suggesting a way to meet to discuss the welfare of her daughter, which he slid under her office door in the prison.   (*See* Doc. 7A, p. 4, ¶ 17.).  In *Banks v. One or More Unknown CI of FPC Canaan*, 2008 WL 2563355, *8 (M. D. Pa.), the Court stated:

---

[30] The Court in *Schlichter v. Limerick Tp.*, 2005 WL 984197, *12 (E.D. Pa. 2005), stated:

> The right of privacy is a qualified right to be let alone, and to
> be actionable the invasion of that right must be unlawful or unjustifiable.
> *Primus v. Burnosky,* Civ. A. No. 02-713, 2003 U.S. Dist. LEXIS 6713 at
> *40 (E.D.Pa. April 17, 2003), citing *Lynch v. Johnston,* 76 Pa.Cmwlth. 8,
> 463 A.2d 87 (1983). There are four types of invasion of privacy in
> Pennsylvania: (1) publicity given to private life; (2) intrusion upon
> seclusion; (3) appropriation of name or likeness; and (4) publicity
> placing a person in a false light. *Tucker v. Merck & Co.,* No. 03-2616,
> 102 Fed. Appx. 247, 256, 2004 U.S.App. LEXIS 13347 at *21 (3d Cir.
> June 29, 2004), citing *Vogel v. W.T. Grant Co.,* 458 Pa. 124, 327
> A.2d 133, 136 (1974).

Longstanding Supreme Court precedent holds that the Fourth Amendment
is not violated when letters containing incriminating material are
intercepted by prison personnel pursuant to an "established practice,
reasonably designed to promote the discipline of the institution."
*See Shroud v. United States*, 251 U.S. 15, 21-22, 40 S.Ct. 50, 64 L.Ed.
103 (1919).  Building upon this precedent, numerous circuit courts
have held that prison officials do not violate an inmate's Fourth
Amendment rights when they inspect an inmate's mail.  *See Bates v. MHM
Correctional Servs.*, No. 05-2285, 2008 WL 396225, at # 5 (M.D. Pa.
Feb. 11, 2008) (citing *Stow v. Grimaldi*, 993 F.2d 1002, 1004-05
(1st Cir. 1993) (holding that a prison practice of requiring non-privileged
outgoing mail to be submitted for inspection in unsealed envelopes
did not violate prisoners' constitutional rights); *Smith v. Delo*, 995 F.2d
827, 830 (8th Cir. 1993) (stating that prison officials are justified in
screening outgoing nonlegal mail for escape plans, contraband, threats,
or evidence of illegal activity); *United States v. Whalen,* 940 F.2d 1027,
1034-35 (7th Cir.), *cert. denied*, 502 U.S. 951, 112 S.Ct. 403, 116 L.Ed.2d
352 (1991) (holding that because prison officials are permitted to
examine inmate mail to ensure that the mail does not interfere with the
orderly running of the prison, contain threats, or facilitate criminal
activity, there is no expectation of privacy in mail that inmates are
required to leave unsealed); *United States v. Kelton*, 791 F.2d 101, 103
(8th Cir. 1986) (stating that a prisoner's Fourth Amendment rights were
not violated when prison official inspected and copied prisoner's outgoing
mail); *Smith v. Shimp*, 562 F.2d 423, 426-27 (7th Cir. 1977) (reasoning
that when a pretrial detainee sends non-privileged mail, he knowingly
exposes same to possible inspection by jail officials and consequently
yields to reasonable search and seizure); *United States v. Baumgarten*,
517 F.2d 1020, 1028 (8th Cir.), *cert. denied*, 423 U.S. 878, 96 S.Ct. 152,
46 L.Ed.2d 111 (1975) (holding that, under circumstances where
prisoner knew of official policy of reading prisoners' outgoing and
unsealed mail, prisoner cannot say the state gained access to contents
of a letter by unlawful search and seizure)).

Plaintiff's letter to Defendant Trgovac was clearly not legal mail, and it clearly could have

been construed as interfering whit the orderly running of the prison, *i.e.* an inmate claiming to have

fathered a child with a female staff member in the prison in which he was confined.   We find that

Plaintiff had no reasonable expectation of privacy with respect to his October 6, 2006 letter to

Defendant Trgovac.  Further, since Plaintiff addressed the letter to Defendant Trgovac and slid it under her office door at the prison, he had a substantially diminished expectation of privacy with respect to his letter and Trgovac could certainly reveal it to prison staff without infringing upon any privacy right of Plaintiff.  Thus, the alleged intrusion by Plaintiff of his privacy rights was initiated by his very own conduct and his letter to Defendant Trgovac about her daughter, whom she has never stated was Plaintiff's child, clearly could be seen as interfering with the orderly running of the prison.  Accordingly, we will recommend that Count III of Plaintiff's Amended Complaint be dismissed.

Therefore, we find that Plaintiff Ratigan has not properly stated claims under RICO (Count I) and §1985(3).  We also find that Plaintiff has not stated a constitutional violation with respect to his First Amendment free speech claim and access to court claim (Count III), his Fourth Amendment claim (Count IV), his Sixth Amendment effective assistance of counsel claim (Count V), his Eighth Amendment claims (Count VI), his failure to train claim (Count VII), and his Ninth Amendment invasion of privacy claim (Count VIII).  We do find that Plaintiff has sufficiently stated a Fifth Amendment Due Process claim (Count II) as against Defendants Trgovac, Cerney and McConnell with respect to his claim for money damages for the fifteen (15) days he spent in disciplinary segregation in the SHU at USP-Allenwood as punishment for the overturned October 2006 misconduct conviction and the sixty-three (63) days he spent in the SHU under the AD Order pending his transfer to USP-Pollock.[31]

---

[31]Notwithstanding Plaintiff Ratigan's *pro se* status and our initial finding that all of his constitutional claims except for his Fifth Amendment Due Process claim are insufficient as to all three Defendants, we do not recommend that he be permitted to amend his Amended

## VII.  Recommendation.

Based on the above, it is respectfully recommended that this case be dismissed as against all Defendants with respect to all of Plaintiff's claims except for his Fifth Amendment Due Process claim, Count II.  (Doc. 7A, pp. 20-22).  It is also recommended that Plaintiff's Due Process claim under the Fifth Amendment (Count II) be allowed to proceed as against the three Defendants. Further, it is recommended that Plaintiff's Motion to Proceed *in forma pauperis* (Doc. 2) be granted and that Plaintiff be directed to immediately pay a partial filing fee in the amount of 20% of his inmate account balance of $140. 97 (*i.e.* $28.19).  Finally, it is recommended that Plaintiff's case be remanded to the undersigned for further proceedings, including service of the Amended Complaint on Defendants only with respect to his due process claim.

s/ Thomas M. Blewitt
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: October 30, 2008**

---

Complaint to include more specific facts against these Defendants with respect to his other seven claims based on futility.  Thus, we find futility of any second amendment of Plaintiff's stated seven claims as to all Defendants, and we shall not recommend Plaintiff be granted leave to amend his amended pleading.  *See Forman v. Davis*, 371 U.S. 178, 182 (1982); *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (The futility exception means that a complaint, as amended, would fail to state a claim upon which relief can be granted); *Alston v. Parker*, 363 F. 3d 229, 235 (3d Cir. 2004).

We also note that since we thoroughly screened Plaintiff's nearly identical previous action in case # 08- 0301 against the same three Defendants, and Plaintiff then moved to voluntarily dismiss  his case, Plaintiff's present Amended Complaint in case #08-1667 is in reality his third attempt to state proper constitutional claims against the Defendants.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN E. RATIGAN, | : | CIVIL ACTION NO. **4:CV-08-1667** |
| | : | |
| Plaintiff | : | (Judge McClure) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| MARIE TRGOVAC, | : | |
| et al., | : | |
| | : | |
| Defendants | : | |

## <u>NOTICE</u>

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **October 30, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the

magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


          **s/ Thomas M. Blewitt**
          **THOMAS M. BLEWITT**
          **United States Magistrate Judge**

**Dated: October 30, 2008**