,IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

BRIAN E. RATIGAN,              :        No. 4:CV-08-1667
                               :
        Plaintiff,             :
                               :        (Judge McClure)
    v.                         :
                               :
MARIE TROGVAC, ET. AL.,        :
                               :
        Defendants.            :

**O R D E R**

March 11, 2009

**BACKGROUND:**

On September 8, 2008, plaintiff, Brian E. Ratigan, currently an inmate at the

United States Penitentiary at Pollock, Pollock, Louisiana ("USP-Pollock"), and

formerly an inmate at the United States Penitentiary at Allenwood, White Deer,

Pennsylvania ("USP-Allenwood"), filed this Bivens[1] civil rights action, pro se,

under 28 U.S.C. § 1331. (Rec. Doc. No. 1).  In addition, plaintiff moved to proceed

in forma pauperis.  An amended complaint was filed on September 16, 2008.  (Rec.

Doc. No. 7).  Plaintiff attached a twenty-eight-page, 100-paragraph, typed

_____

[1]Bivens is the shorthand given to claims made against a federal agent for
violations of a federal right, including constitutional rights.  Bivens v. Six
Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Amended Complaint,  to the filed form Amended Complaint.  The twenty-eight-page typed Amended Complaint shall be referred to as Record Document 7A.

Plaintiff levies a plethora of claims against Bureau of Prisons' ("BOP") employees at USP-Allenwood - Maria Trogvac, Psychologist; Todd Cerney, Disciplinary Hearing Office; and Chris McConnell, Special Investigative Service Lieutenant.  Specifically, plaintiff's Count I asserts Racketeer Influenced and Corrupt Organizations Act ("RICO") claims against the three defendants under 18 U.S.C. §§ 1961-1965 for employing their official positions to obstruct justice, tamper with a witness, provide false inculpatory statements, conceal exculpatory evidence, illegally detain him, retaliate against him, try to "maliciously prosecute [him] for extortion," and violate his Constitutional rights.  (Rec. Doc. No. 7A, pp. 18-19).

Plaintiff's Count II raises a Fifth Amendment Due Process claim, alleging that Trogvac made false statements, falsified documents and concealed exculpatory evidence in order to obtain a criminal prosecution of the plaintiff and a misconduct conviction against him which resulted in his confinement in the Special Housing Unit ("SHU") and his eventual transfer to USP-Pollock.  (Id. at pp. 20-22). Plaintiff also claims that Cerney convicted him of a misconduct offense without an adequate charge or supporting evidence, that McConnell conducted an improper

investigation into the incident between plaintiff and Trgovac regarding plaintiff's letter to her, and that McConnell had a conflict of interest and covered up the defendants' improper conduct because of his intimate relationship with Trgovac. (Id.).

In Count III, plaintiff claims that Trgovac violated his First Amendment right to freedom of expression by refusing to allow him to communicate with the woman he believed was their adult daughter.  (Id. at 22-23).  Plaintiff also claims that McConnell violated his First Amendment right to access to the courts by holding him in USP-Allenwood's SHU under false pretenses.  (Id.)

In Count IV, plaintiff avers that his Fourth Amendment rights were violated by McConnell when he seized and detained the plaintiff in the SHU without probable cause and under false pretenses.  (Id. at 23).

In Count V, plaintiff claims that the defendants violated his Sixth Amendment right to effective assistance of counsel by conspiring to ensure that his pro se representation was inadequate during prison disciplinary hearings and appeals.  (Id. at 23-24).

Plaintiff's Count VI raises an Eighth Amendment claim, alleging that the defendants acted "with intend and deliberate indifference to inflict severe psychological torment, [and] distress" on him.  (Id. at 24-25).  It also appears that

3

plaintiff raises a Pennsylvania state law claim for intentional infliction of emotional distress.  (Id.).

Plaintiff's Count VII asserts that BOP supervisors failed to "properly instruct, supervise, control and discipline" their employees, (id. at 25-26), and that this lapse enabled the defendants to make false statements, file false charges against the plaintiff, conceal evidence, obstruct criminal investigations, and retaliate, coerce and defame the plaintiff.  (Id.).  Additionally, plaintiff claims that BOP officials were aware of the intimate relationship between Trogvac and McConnell and that the failure to neutralize this conflict of interest through instruction, training and supervision enabled the defendants to violate his constitutional rights.  (Id.).

In the typed amended complaint's final count, Count VIII, plaintiff asserts a Ninth Amendment claim and a Pennsylvania state law claim for invasion of privacy.  Plaintiff avers that defendants forced him "to reveal private and personal information, (the past sexual encounter with Trgovac that produced a child, out of wedlock, in order to prove [his] innocence . . . ."  (Id. at 27).  Plaintiff also contends that the defendants conspired with one another to "prohibit[] [him] from having contact, expression and communication with [his] biological child . . . ."  (Id.).  In addition, plaintiff alleges that defendants "sought to embarrass, humiliate

4

and intimidate [him] through unlawful searches by forcing strip-searches for their inspection that they might glory in his flesh." (Id.).

Plaintiff requests judgment against the defendants for compensatory damages in an amount exceeding $6,750,000 and punitive damages in excess of $1,000,000. (Id.). Plaintiff also demands attorney fees, costs of the action and any other relief we "deem[] just, proper and equitable." (Id.).

This matter was initially referred to United States Magistrate Judge Blewitt.

On October 30, 2008, Magistrate Judge Blewitt filed a fifty-seven page Report and Recommendation ("R&R"). (Rec. Doc. No. 10). In his report, the magistrate judge concluded that: (1) no conspiracy claim was asserted under 42 U.S.C. § 1985(3), (id. at 19-20); (2) plaintiff's Count I RICO claim is improper under 19 U.S.C. § 1962 and should be dismissed for failure to state a claim because plaintiff failed to demonstrate that RICO activity substantially caused an injury to his business or property, defendants' activities are not the predicate acts of racketeering required under 18 U.S.C. §§ 1961 and 1962, and defendants are not distinct and separate from the alleged enterprise as required by law, (id. at 19-26); (3) plaintiff's Count II Fifth Amendment Due Process claim, insofar as it involves the fifteen (15) days he spent in disciplinary segregation in the SHU for an overturned disciplinary violation and the sixty-eight (68) days he spent in the SHU

under the Administrative Detention Order of October 10, 2006, is proper and may

proceed against the defendants, (id. at 26-29); (4) plaintiff's Count III First

Amendment claim should be dismissed for failure to state a claim because, inter

alia, plaintiff had no right to associate with his alleged daughter or send this type of

correspondence to a BOP female staff member working at the prison in which the

plaintiff is incarcerated.  Additionally, plaintiff, inter alia, did not allege that

ongoing litigation was frustrated by McConnell's activities, nor did he claim that

there are underlying claims in the current action that were hindered.  Consequently,

plaintiff has failed to state a claim upon which relief can be granted because he has

not alleged that he suffered an actual injury, (id. at 30-38); (5) plaintiff's Count IV

Fourth Amendment claim should be dismissed for failure to state a claim upon

which relief can be granted because Ratigan's significantly limited reasonable

expectation of privacy was not violated by a physical seizure that occurred while

he was already incarcerated, (id. at 39-42); (6) plaintiff's Count V Sixth

Amendment claim should be dismissed for failure to state a claim upon which

relief can be granted because Ratigan was successful in his appeal and he may not

"raise an ineffective assistance of counsel claim when he [is] representing himself

in the context of a prison disciplinary hearing and appears for which he is not

entitled to counsel," (id. at 43-44); (7) plaintiff's Count VI Eight Amendment

6

claim should be dismissed for failure to state a claim upon which relief can be granted because, <u>inter alia</u>, Ratigan did not allege that the defendants denied him the "minimal civilized measure of life's necessities." (<u>Id.</u> at 47-48).  Additionally, plaintiff's state law intentional inflict of emotional distress claim is improper in this <u>Bivens</u> action because the Federal Tort Claim Act ("FTCA"),  not a <u>Bivens</u> action, is the trigger for tort claims against employees of the United States for money damages and the plaintiff has failed to demonstrate that he exhausted the BOP's administrative remedies prior to filing under the FTCA, (<u>id.</u> at 44-47); (8) plaintiff's Count VII failure to properly instruct, supervise, control and discipline claim should be dismissed for failure to state a claim upon which relief can be granted because, <u>inter alia</u>, plaintiff did not state the personal involvement of the defendants with respect to this claim, (<u>id.</u> at 50); (9) plaintiff's Count VIII Ninth Amendment claim should be dismissed for failure to state a claim upon which relief can be granted because the alleged First and Fourth Amendment violations upon which the Ninth Amendment claim is based were not violations of Ratigan's constitutional rights.  (<u>Id.</u> at 51).  Moreover, Ratigan may not raise the state law invasion of privacy claim here for aforementioned reasons, (<u>id.</u> at 52); (10) plaintiff's motion to proceed <u>in forma pauperis</u> should be granted and plaintiff should be ordered to pay a partial filing fee of $28.19, (<u>id.</u> at 55); and, (11) the case

should be remanded to Judge Blewitt for further proceedings.

On January 5, 2009, plaintiff filed twenty-seven pages of objections to Judge Blewitt's R&R.  (Rec. Doc. No. 18).  Following a careful review of this document, it is clear that a majority of the plaintiff's objections are statements or claims which appeared in the typed amended complaint.

A district court reviews <u>de novo</u> those portions of a magistrate judge's R&R to which a party objects.  L.R. 72.3.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." <u>Id</u>.

After <u>de novo</u> review of the complaint and documents in the case, including the R&R and plaintiff's objections to the R&R, and applicable law, we have concluded that we agree with a majority of the magistrate judge's thorough analysis and recommendations, and will therefore adopt the R&R in part.   (Rec. Doc. No. 10)  Therefore, we will dismiss all of the plaintiff's counts except Count III and VII, allowing plaintiff to amend Count VII, and remand the case to Judge Blewitt for further proceedings consistent with this Order.

 It should be noted that, for the purposes of judicial economy, we will not rehash the sound reasoning employed by the magistrate judge or address plaintiff's attempts to rehash the amended complaint.  Instead, we will only respond to new,

proper objections.

**DISCUSSION:**

1.   <u>Magistrate Judge Blewitt's Authority To Preside Over The Case At Bar</u>

Plaintiff levies a litany of objections regarding the appropriateness of the

magistrate judge's filing a R&R with this court.  In support, Ratigan claims, <u>inter</u>

<u>alia</u>, that he did not consent to the magistrate judge presiding over the case in

accordance with 28 U.S.C. § 636(c)(1) and that the magistrate judge is not a

disinterested party.  We find these claims (and any other such claims questioning

the neutrality or competency of the magistrate judge) to be wholly without merit.

Additionally, under 28 U.S.C. § 636(b)(1), it is clear that Judge Blewitt has the

authority to issue a R&R in this case because the plaintiff is a prisoner in federal

custody challenging various conditions of his confinement.

2.   <u>Plaintiff's Right to Amend Complaint</u>

The plaintiff claims that "this court should . . . allow Ratigan to amend his

complaint as to all claims."  While it is true that the court generally must allow the

plaintiff to amend a claim vulnerable to dismissal under Fed. R. Civ. P. 12(b)(6),

this is not the case where such an amendment would not cure the deficiency.  <u>Shane</u>

v. Fauver, 213 F.3d 113, 115-16 (3d Cir. 2000).  After a thorough review of the plaintiff's claims and objections, we conclude that, with the exception of Count VII, this is the case here; the plaintiff cannot cure the defects in the claims marked for dismissal.  Such attempts would be futile.  Additionally, it is important to note that the plaintiff has filed one amended complaint in this case and has had more than ample time to address any issues plaguing its case, but has failed to act reasonably to do so.  Therefore, we will not permit the plaintiff to amend his complaint, except for Count VII, in an effort to sustain the claims that will be dismissed herein.

3.    Conspiracy Claim

Although plaintiff did not discuss the possibility of a conspiracy under 42 U.S.C. § 1985(3), Judge Blewitt, sua sponte,  noted that no such conspiracy claim was properly alleged.  (Rec. Doc. No. 10, pp. 19-20).  Consequently, because the plaintiff did not initiate this conspiracy claim, we find it unnecessary to discuss it.

However, had the plaintiff asserted such a claim, we would have agreed with the Magistrate Judge and held that no discriminatory purpose was alleged, as required under Section 1985(3) to sustain a conspiracy claim.  The plaintiff contends that he satisfied the discriminatory purpose requirement because the defendants discriminated against him because he was "POLITICAL," a "white

separatist Christian", "with anti-government associates."  (Rec. Doc. No. 18, pp. 3);

see Banks. V. One or More Unknown CI of FPC Canaan, No. 1:06-CV-1127, 2008

WL 2563355, at *11 (M.D. Pa. June 24, 2008) (holding that a Section 1985(3)

claim cannot be maintained unless the plaintiff alleges "racial or class based

discriminatory animus' motivated defendants' conduct.").

We reject this assertion as disingenuous.  Plaintiff neither provided a scintilla

of evidence suggesting such animus nor originally claimed such animus existed.

Consequently, the only "class" in which plaintiff could reasonably claim

membership in the case at bar is "prisoners corresponding with female staff

members."  "Whatever may be the precise meaning of a 'class' . . . beyond race, the

term unquestionably connotes something more than a group of individuals who

share a desire to engage in conduct that the § 1985(3) defendant disfavors.

Otherwise, innumerable tort plaintiffs would be able to assert causes of action under

§ 1985(3) by simply defining the aggrieved class as those seeking to engage in the

activity the defendant has interfered with."  Bray v. Alexandria Women's Health

Clinic, 506 U.S. 263, 269 (1993).  Adhering to this premise, it is clear plaintiff has

not alleged membership in an appropriate class under Section 1985.


4.     Count I - RICO Claim

Under RICO, a claim cannot be sustained unless the plaintiff alleges that he was injured in his business or property.  18 U.S.C. § 1964(c).   The plaintiff objects to the magistrate judge's characterization that the $2,250.00 Ratigan spent to hire on Federal Prison Consultants is not an injury to business or property.  (Rec. Doc. No. 18, p. 5).  We agree with the magistrate judge.

As Judge Blewitt accurately noted, Ratigan was not entitled to be housed in any particular facility.  (Rec. Doc. No. 10, p. 33-34).  Therefore, because his transfer was not an illegal act, any funds spent in an attempt to rectify the transfer are not injuries to business or property as far as RICO violations are concerned.  However, even if we accepted that these out-of-pocket expenses were connected with a violation, the expense would still be related to an emotional injury, not an injury to business or property, and therefore are not compensable under RICO. <u>See</u> <u>Doe v. Roe</u>, 958 F.2d 763, 767-68 (7th Cir. 1992); <u>see</u> <u>also</u> <u>Maio v. Aetna, Inc.</u>, 221 F.3d 472, 483-84 (3d Cir. 2000).[2]

Ratigan also claims that personal property worth $500 was displaced "due to being packed out from the SHU."  (Rec. Doc. No. 18).  While the loss of personal

---

[2]This is equally applicable to plaintiff's claim that he spent "hundreds of hours and thousands of dollars in preparing this complaint."  <u>See</u>, <u>e.g</u>, <u>Walter v. Palisades Collection, LLC</u>, 480 F. Supp. 2d 797, 805 (E.D. Pa. 2007) (holding that expenses incurred in an attempt to file a RICO claim do not qualify as injuries to business or property).

property could qualify as a concrete financial loss and an injury to property, <u>Maio</u>, 221 F.3d at 483-84, Ratigan fails to indicate which defendant, if any, had a role in the alleged theft of this property or how this theft was the proximate result of the alleged pattern of racketeering activity.  Moreover, the ambiguity of "$500 in personal property" would not satisfy the concrete financial loss requirement.[3]

In addition, Ratigan claims that he has "sufficiently plead a RICO claim against defendants under [18 U.S.C.] § 1962(c) because he alleges that the defendant officers used their official positions (THE ENTERPRISE) to commit illegal acts."  (Rec. Doc. No. 18, p. 6).  Plaintiff has clearly misinterpreted the law here.

The RICO statute states that "it shall be unlawful for any person employed by or associated with any enterprise engaged in . . . interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).  The statute plainly requires a "pattern of racketeering activity," not mere illegal acts.  By statutory definition, a "pattern of racketeering activity" requires at least two predicate acts of racketeering activity.  18 U.S.C. § 1961(5).

---

[3]We find it curious that Ratigan waited until after the R&R was filed to bring this alleged theft to the Court's attention.

13

What constitutes "racketeering activity" is explained by statute.  <u>See</u> 18 U.S.C. §

1961(1). The definition under the statute is a list of criminal acts which will

constitute "predicate acts" for purposes of RICO.  The plaintiff must show that two

or more of these predicate criminal acts have occurred.  Merely characterizing some

event as criminal does not make it a predicate act for racketeering purposes.  And,

as the magistrate judge correctly held, Ratigan failed to properly establish such a

"pattern of racketeering activity."  <u>See</u> (Rec. Doc. No. 10, p. 23-26).

        Furthermore, plaintiff also claims that it is not necessary to properly state

defendants' participation in a pattern of racketeering in order to successfully plead a

RICO violation.  (Rec. Doc. No. 18, p. 6).  We disagree.  It would be blatantly

illogical and improper to permit a plaintiff to continue with a claim without

identifying the alleged perpetrators and their actions. <u>See</u> <u>Hollis-Arrington v. PHH</u>

<u>Mortg. Corp.</u>, 205 Fed. Appx. 48, 54 (3d Cir. 2006); <u>Gintowt v. TL Ventures</u>, 239

F. Supp. 2d 580, 584 (E.D. Pa. 2002); <u>see</u> <u>also</u> <u>Waldo v. North American Van</u>

<u>Lines, Inc.</u>, 102 F.R.D. 807, 818-19 (W.D. Pa. 1984).  In fact, doing so would only

serve to frustrate defendants' abilities to respond.


5.      <u>Count II - Fifth Amendment Due Process Claim</u>

        In addition to the claims the magistrate judge found permissible under this

14

count, plaintiff argues that he should be allowed to pursue a Fifth Amendment Due

Process claim in regards to the defendants' failures to mirandize him during the

incident in question.  We do not concur.  Judge Blewitt properly noted that the

defendant was not entitled to <u>Miranda</u> warnings in this instance because he "was not

physically restrained, he was not interrogated by law enforcement personnel who

had authority to file criminal charges against him, and his statements were never

used against him in a criminal proceeding.  In fact, [p]laintiff admits that there was

never a criminal investigation and no charges were ever filed regarding his contact

with Trgovac via his October 6, 2006 letter."   (Rec. Doc. No. 18, p. 12 n.12);

<u>Burkholder v. Newton</u>, 116 Fed. Appx. 358, 360-61 (3d Cir. 2004).  Therefore, a

Fifth Amendment Due Process claim related to an alleged <u>Miranda</u> violation is

improper, unnecessary and shall not be permitted to continue.


6.      <u>Count III - First Amendment Claim</u>

        Ratigan asserts that his First Amendment constitutional rights were violated

by the defendants when, <u>inter alia</u>, (1) Trgovac refused to provide him information

that would enable him to contact an individual he believes is his daughter, (2)

"Ratigan was 'punished' in retaliation for his benevolent inquiry," and (3) Ratigan's

letter was an "exercis[e of] his First Amendment right of freedom of speech

[because] he [was] complain[ing] to the prison administrators about the conditions

of his confinement." (Rec. Doc. No. 18, p. 8). We find that plaintiff's contention

lacks merit.

Plaintiff points to nothing that indicates an inmate has the right to correspond

with a BOP female staff member regarding the staff member's personal

information. Even assuming this was permissible, Trgvoac's daughter had

absolutely nothing to do with Ratigan's imprisonment or the conditions thereof. As

a result, there is no reasonable way to characterize Ratigan's letter as "complaining

to prison administrators about conditions of confinement."

Moreover, Judge Blewitt correctly demonstrates that plaintiff is not

guaranteed the right to associate with or contract Trgovac's adult daughter. <u>See</u>

(Rec. Doc. No. 10, pp. 32-34). Consequently, it is clear he was not entitled to glean

personal information from Trogvac, whether it related to her daughter or not. In

fact, it is well settled that an individual may not be compelled to speak. <u>Wooley v.</u>

<u>Maynard</u>, 430 U.S. 705, 714 (1977); <u>see</u> <u>West Virginia Board of Education v.</u>

<u>Barnette</u>, 319 U.S. 624 (1943). Therefore, if we were to force Trogvac to divulge

the requested information against her will or punish her for failing to do so, we

would actually violate her First Amendment rights.

Considering that Ratigan had no First Amendment rights involving his

communication with Trogvac, he cannot claim that he was retaliated against for exercising such rights when he sent the letter.  Furthermore, despite Ratigan's extensive posturing, a thorough review of the record fails to reveal any other legitimate First Amendment violations.

7.      <u>Count IV - Fourth Amendment Claim</u>

        The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against <u>unreasonable</u> <u>searches</u> <u>and</u> <u>seizures</u>, shall not be violated . . . ."  (emphasis added).  Quizzically, Ratigan's objections largely ignore this premise, <u>see</u> (Rec. Doc. No. 18, pp. 12-13), repeating only his claim that "solitary confinement violate[d] his Fourth Amendment and due process rights."  (<u>Id.</u> At 12).  Since we agree with Judge Blewitt's assessment of plaintiff's claim, <u>see</u> (Rec. Doc. No. 10, pp. 42), and find plaintiff has failed to file a proper objection regarding this particular count, we decline to address this further.

8.      <u>Count V - Sixth Amendment Claim</u>

        The Supreme Court has long recognized that "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial."  <u>Strickland v. Washington</u>, 466 U.S. 668, 684 (1984).  However, plaintiff's

claim that defendants somehow interfered with this right in the case at bar is without merit.  The Sixth Amendment guarantees apply only to criminal prosecutions. Kirby v. Illinois, 406 U.S. 682, 690 (1972).  Prison disciplinary proceedings and appeals are not criminal prosecutions within the meaning of the Sixth Amendment.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Therefore, Judge Blewitt is correct.  "[T]he [p]laintiff inmate represented himself in his prison disciplinary hearing and in his appeals, and he was not entitled to counsel at the hearing, [therefore] he cannot claim that [d]efandants denied him his Sixth Amendment right to effective assistance of counsel."  (Rec. Doc. No. 10, p. 43).

9.    Count VI - Eighth Amendment Claim & State Law Claim For Intentional
      Infliction Of Emotional Distress

Plaintiff has not shown that he has exhausted his administrative remedies regarding the state law claim or that it was filed under the FTCA.  Consequently, we concur with the magistrate judge's reasoning for dismissing the intentional infliction of emotional distress claim.  See (id. at 44-47).

As far as plaintiff's objections to the magistrate judge's R&R for this count are concerned, plaintiff essentially repeats the assertions contained within his typed amended complaint.  As a result, we find that the magistrate's thorough assessment is more than adequate, see (id. at 47-48), and decline to address this count further.

18

10.   <u>Count VII - Failure To Properly Instruct, Supervise, Control & Discipline</u>

The magistrate judge recommended dismissing this count because the plaintiff neglected to state the personal involvement of the defendants with respect to this claim. (<u>Id.</u> at 50).  Although this would be proper if the plaintiff could not remedy the deficiency with this claim, plaintiff indicates that he wishes to amend the complaint to include the defendants' activities, and those of their supervisors, with regards to this count.  Therefore, we will grant the plaintiff leave to amend Count VII within ten days of the filing this order.  If the complaint is not amended within that time, the magistrate judge's recommendation will be followed and this count will be dismissed.

11.   <u>Count VIII - Ninth Amendment Violation & State Law Malicious Invasion of Privacy Claim</u>

Plaintiff has not shown that he has exhausted his administrative remedies regarding the state law claim or that it was filed under the FTCA.  Consequently, we concur with the magistrate judge's reasoning for dismissing the invasion of privacy claim.  <u>See</u> (<u>id.</u> at 52).

Ratigan's objections to the magistrate judge's recommendation on this count echo his typed amended complaint.  Since plaintiff has essentially repeated his initial assertions, we find that the magistrate's thorough assessment is more than

adequate, <u>see</u> (<u>id.</u> at 50-54), and decline to address this count further.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Plaintiff's "Motion for Leave to Proceed <u>in</u> <u>forma</u> <u>pauperis"</u> is GRANTED.  (Rec. Doc. No. 2).

2.    Plaintiff's "Motion to Exempt Plaintiff From Paying Filing Fees" is DENIED.  (Rec. Doc. No. 15).  Plaintiff must immediately pay a partial filing fee of $28.19 to the clerk of court.

3.    United States Magistrate J. Blewitt's Report and Recommendation is ADOPTED in part, to the extent that it is consistent with this Order. (Rec. Doc. No. 10).

4.    Plaintiff's specific monetary damage requests are dismissed.

5.    The following Counts are dismissed, with prejudice: Count I, Count III, Count IV, Count V, Count VI and Count VIII.

6.    Count II is partially dismissed, with prejudice, to the extent described in this Order.  However, plaintiff may proceed with respect to his Count II due process claim under the Fifth Amendment regarding the fifteen days he spent in disciplinary segregation in the SHU due to an overturned misconduct conviction and the sixty-eight days he spent in

disciplinary segregation pursuant to the Administrative Detention

Order of October 10, 2006.

7.      Plaintiff is GRANTED leave to amend Count VII within fourteen days

of the filing of this order.

8.      Plaintiff's "Motion to Clarify the Filing of Ratigan's Verified

Amended Complaint" is GRANTED.  (Rec. Doc. No. 9).

9.      The case is REMANDED to the magistrate judge for further

proceedings consistent with this Order.

    s/ James F. McClure, Jr.
James F. McClure, Jr.
United States District Judge